[Lomax v. LeGrand & Co.]

# Lomax *v.* LeGrand & Co.

*Special Action on the Case, by Landlord against Purchaser of Tenant's Crop.*

1. *Landlord's lien, and attachment against tenant's crop ; distinguished from distress for rent at common law.*—The landlord's statutory lien on his tenant's crop, with the remedy by attachment given for its enforcement (Rev. Code, §§ 2961-63), unlike the right to distrain for rent at common law, does not cease at the expiration of the term, and is not impaired by the removal of the crop from the rented premises, but continues until the crop passes into the possession of a purchaser without notice.

2. *Same ; when purchaser is chargeable with notice.*—Actual knowledge is not necessary to charge a purchaser from the tenant with notice of the landlord's lien on the crop: whatever is sufficient to put him on inquiry, is also sufficient to charge him with notice.

3. *Same.*—The tenant having executed a mortgage on the "entire crop of cotton and corn which may be made during the present year, on the plantation in said county known as Mrs. C. L.'s plantation, which I" [the mortgagor] "am cultivating the present year;" this recital is notice to the mortgagee of the relation existing between the tenant and Mrs. C. L.; and notice of the relation is also notice of the landlord's statutory lien.

4. *Same.*—The lien is the creature of the statute, and incident to the relation, and is not matter of contract, although it may be waived or relinquished by contract; but, to charge a purchaser with notice of it, it is not necessary that he should know the terms of the contract between the landlord and tenant, or the stipulated amount of rent.

5. *Same.*—The fact that the crops are on the rented premises, is notice to all the world of the lien attached to them: it is only after their removal from the premises, when the tenant has possession of them distinct from his possession of the premises, that he can sell and convey a good title to the purchaser; and where, having executed a mortgage on them before they were, grown, whose recitals are sufficient to charge the mortgagee with notice, he removes them from the premises, and delivers them to the mortgagee, the latter can not claim protection as a purchaser without notice.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

This action was brought by Mrs. Caroline A. Lomax, against M. P. LeGrand & Co., and was commenced on the 27th January, 1873. It was a special action on the case, claiming $1,500 as damages, for that whereas the plaintiff, on the 1st January, 1872, rented a certain plantation in Montgomery county, for and during the year 1872, to one J. P. Houser, at and for the stipulated rent of $1,350, payable in three equal installments, of $450 each, on the 15th October, the 15th November, 1872, and the 1st January, 1873 ; and the said Houser entered on the lands under said contract, and cultivated them during the year, and raised a large crop of cotton, to-wit, fifty bales, on which plaintiff had a statu-

tory lien for the payment of the rent as stipulated; and said Houser, having removed said cotton from the rented lands, without the consent of the plaintiff, and without paying the agreed rent (except $213.20, a portion thereof), delivered the same to said LeGrand & Co., who had notice of plaintiff's lien, and who nevertheless received and sold the cotton to other persons, unknown to plaintiff, and who had no notice of her lien; whereby plaintiff's lien was lost and destroyed, and she was injured, &c. The defendant pleaded the general issue, and issue was joined on that plea; and on the trial, there was a verdict and judgment for the defendant, under the charge of the court, the plaintiff reserving the following bill of exceptions :

" It was proved that the plaintiff had, for more than twenty years, owned a plantation in said county, about four miles from the city of Montgomery; that in January, 1872, she rented the same to J. P. Houser for the year 1872, taking a written contract, by which he agreed to pay the rent in three equal installments, to-wit : $450 on the 15th October, $450 on the 15th November, and $450 on the 1st January, 1873 ; that said Houser entered on said place under said contract of renting, and cultivated it during that year, making about sixty bales of cotton thereon; and that he did not deliver any of said cotton, or other crops raised on said place, to plaintiff, but paid her in money, in the latter part of October, 1872, about $200, which was all he had ever paid on account of said rent. On the 25th April, 1872, said Houser executed a mortgage to defendants;" which was made an exhibit to the bill of exceptions, and which, after setting out an indebtedness of $2,849.39 for advances made to him by LeGrand & Co. to enable him to make a crop, as evidenced by his promissory note, of even date with the mortgage, and his promise to deliver to them seventy-five bales of cotton by the 15th November, 1872, conveyed as security the following property : " The entire crop of cotton and corn which may be made and grown during the present year on the plantation in Montgomery county, known as Mrs. C. Lomax's plantation, which I am cultivating the present year ; also, the following mules and horses," &c. " The evidence further showed, that said Houser made over sixty bales of cotton on said place during that year, all of which, except what he let LeGrand have, he disposed of, and sold to whom he pleased, in the usual way, hauling it to the city, and selling it openly, without any attempt by plaintiff to prevent it. But plaintiff swore, that she knew nothing of this : that she was absent from home, with the exception of three days, from about the 1st August to the 15th October, and had no

agent in the city.   The evidence showed, also, that said Le-Grand had lived in Montgomery for many years, and knew that said plantation belonged to plaintiff; and that before he sold the goods to said Houser, and before he took said mortgage, he knew that said Houser was occupying said plantation as plaintiff's tenant.   But said LeGrand swore, that he did not know the terms of the contract of renting, nor whether the rent had been paid cash, or was still due; that he never made any inquiry of the plaintiff, or any other person, about the terms of the renting, and that he had no knowledge of the plaintiff's lien on the cotton at the time he received and sold it.

"The evidence showed, also, that during the fall, commencing the latter part of August, and up to about the 1st November of that year, Houser delivered to defendant twenty-six bales of said cotton, brought into Montgomery by the wagon-load, and sold by defendant as soon as received, and the amount credited on Houser's debt to him; all of which was received by said LeGrand, in entire good faith, on his own debt, and with no intention on his part to defeat or destroy plaintiff's lien, if such she had; and Le-Grand not knowing actually whether she had any lien, or whether she had been paid.   The evidence showed, also, that LeGrand received from Houser about twenty other bales, not grown on said place, making forty-six bales in all; but this amount lacked three or four hundred dollars of paying the debt which said Houser owed him.   It was shown, also, that plaintiff did not take out any attachment, but never in any way consented to Houser's removal of any part of the crop, unless such consent is to be inferred from the fact that he removed the cotton from the plantation, and brought it to town, as fast as it was ginned and baled, and that she made no effort to prevent its being so removed; that, relying upon Houser's repeated promises to pay the debt, she waited until early in November, just before the second installment became due, when she ascertained, by going on the place, that all the crop had been removed, except about one bale, which was claimed by the laborers on the place; that she at once called upon Houser, who informed her that he had delivered the cotton grown on her place to defendant, but that he would bring other cotton, from a place in Autauga, to pay her rent; that he failing to do this, in December she made a demand, as landlord, on the defendant, for the cotton received by him, and claimed that he should give it up, or pay the rent, as she claimed a lien on it by virtue of the rent due her.   Defendant admitted his receipt of the cotton, but claimed it as due on his mortgage; and

he had sold it, and applied the proceeds to the payment of the amount due him on the mortgage, before plaintiff made any demand on him, or gave him any notice that she claimed a lien on it.   Defendant refused either to pay the rent, or to deliver the cotton to plaintiff, or to pay her the proceeds; but he did not, at the time of the interview, deny any knowledge of the renting, saying nothing about it.   Defendant also denied, on oath, as a witness, any actual knowledge or notice of plaintiff's lien.

"The foregoing was, in substance, the whole testimony. Upon this evidence, the court charged the jury, in express terms, that while the defendant would be liable in this action, if he received the cotton with notice of the plaintiff's lien, yet the recitals in the mortgage taken by him from Houser was not sufficient notice, and was not such notice as would put him on inquiry, to ascertain if there was rent due, and whether it had been paid; nor did the law imply such notice to him, from such a fact as that stated by Le-Grand, that he was on the plantation once during the year, and knew that the plantation was the property of the said plaintiff.

"The court further charged the jury, that to give the defendant notice, and put him on inquiry, he must have some other and further knowledge of the renting, and of the terms of the contract of renting, than was given by knowledge that the plantation belonged to the plaintiff, and that Houser held as her tenant, and the recitals in his mortgage, which stated that Houser was cultivating that year the lands of the plaintiff.

"The court charged the jury, also, that the mere fact that the defendant knew Houser had rented the plantation from the plaintiff, for the year 1872, and was holding and cultivating it as her tenant, was not sufficient evidence to put the defendant on inquiry; but that, in order to hold him responsible, it must be proved that he knew there was a *lien* on the cotton for the unpaid rent, and that it was the plaintiff's duty to prove that he knew there was a lien for rent on the cotton, at the time he bought it.

"The plaintiff excepted to each of these charges, and requested the court to give the following charges, which were in writing:  1. 'If the jury believe that LeGrand had knowledge of the fact that Houser was the tenant of Mrs. Lomax, and that the cotton received from Houser was grown on the plantation of Mrs. Lomax, then he received the cotton subject to the payment of the rent due to Mrs. Lomax; if there was any due at the time he received the cotton, the plaintiff is entitled to recover the amount so due, with interest, if the

cotton so received and sold by LeGrand was of value suffi-
cient to pay the rent due.' 2. 'That if LeGrand, at the
time he received the cotton, knew that the plantation on
which it was grown belonged to Mrs. Lomax, and that Houser
had rented it for the year, then the law charged him with
knowledge that Mrs. Lomax had a lien upon said crop ; and
to protect himself, he was put upon inquiry, as to whether
the rent was due, and when and how much ; and he is
chargeable with every fact and circumstance he could have
ascertained by making such inquiry.' The court refused to
give either of these charges, and the plaintiff excepted to
the refusal of each."

The charges given by the court, and the refusal of the
charges asked, are now assigned as error.

The case was decided at the December term, 1876, but
has never been reported, the original opinion having been
lost ; and it is now published from a copy of the opinion
found in the court below.

THOS. H. WATTS, with J. T. HOLTZCLAW, for appellant.—Le
Grand knew that Houser was the tenant of Mrs. Lomax, and
that the cotton was grown on the lands rented from her.
This was sufficient to put him on inquiry, and to charge him
with implied notice of her lien.—*Pritchett v. Munroe*, 22 Ala.
502; *Saltmarsh v. Bower & Co.*, 22 Ala. 221; *Jones v. Web-
ster*, 48 Ala. 109; 2 Vesey, 437; 14 Vesey, 426; 16 Vesey, 248;
1 John Ch. 267; 4 Ohio, 458; 15 Peters, 112. That the action
lies against a purchaser who has notice of the lien, see *Hus-
sey v. Peebles*, 53 Ala. 432.

HERBERT & MURPHEY, *contra*.—Case is an equitable action,
and the plaintiff can not recover when he was himself in
fault—when the loss or injury complained of was caused by
his own negligence, or might have been prevented by the
exercise of proper care and diligence by him.—1 Bacon's
Abr. 109, tit. *Action on the Case, C;* Ventr. 310; 2 Stark. Ev.
212; 2 Greenl. Ev. § 232 a; *Jones v. Allen*, 1 Head, Tenn. 635.
Under this rule, if the complaint had set out all the facts
which the evidence established, the plaintiff could not have
recovered. She had a lien for rent, superior to the defend-
ant's claim under his mortgage ; and she charges that this
lien was lost to her and destroyed by the act of the defendant.
But the proof shows that her lien was lost by her own neg-
ligence, and her failure to use ordinary diligence to save her
debt ; that the crops raised by the tenant were more than
enough to pay her debt and the defendant's debt ; that the
greater part was openly removed and sold by the tenant,

during the plaintiff's absence, and the defendant did not secure enough to pay his own debt. To allow her now to recover of the defendant, and thus make him bear the consequences of her negligence, would be inequitable. The case is similar, in principle, to judgment liens, as in the cases of *Patton v. Hayter, Johnson & Co.*, 15 Ala. 18; *Turner v. Lawrence*, 11 Ala. 430; *Waring v. Durden*, 11 Ala. 988. On the equity of the case, see White & Tudor's Lead. Cases in Eq., vol. 2, p. 131; 14 Ohio, 428. Nor could the defendant be charged with implied notice, under the facts proved. When the plaintiff allowed her tenant to remove the crops, and sell them in open market, her conduct could only be reconciled with good faith on the hypothesis that her rent was paid. "Even where circumstances are brought directly home to the purchaser, which would have been sufficient, in themselves, to put him on inquiry, and thus amount to notice; he will be entitled to rebut the presumption of notice, which would otherwise arise, by showing the existence of other and attendant circumstances, of a nature to allay his suspicions, and lead him to suppose that inquiry was not necessary."— 2 Lead. Cases in Equity, Hare & W.'s Notes, 114; *Moore v. Clementson*, 2 Camp. 22.

BRICKELL, C. J.—1. The statute declares a lien on crops grown on rented premises, for the rent of the current year. Process of attachment is given, as the remedy for the enforcement of the lien, if the crop is removed, or about being removed from the premises, without the consent of the landlord. If removed, the attachment may be levied on it in the possession of the tenant, or one holding it in his right, or in the possession of a purchaser with notice of the lien.—Rev. Code, §§ 2961–63. Rent, at common law, was a lien—a charge on the goods of the tenant, remaining on the demised premises. The landlord could distrain, however, only on the premises; and if the goods were removed by the tenant before distress, the lien, or right to charge them, was lost. So, the right to distrain was lost, if not exercised before the expiration of the term. There are acts of parliament, modifying these rules of the common law, enlarging the remedy by distress, and authorizing the landlord to pursue and seize the goods after the removal; which, with changes and alterations, to adapt them to their condition, have been re-enacted in several States of the Union. A material distinction between them and our statutes is, that the removal from the premises, or the expiration of the term, does not impair the lien of the landlord—that the lien is preserved, until the crop

[Lomax v. LeGrand & Co.]

passes into the possession of a purchaser without notice.—
*Governor v. Davis*, 20 Ala. 366.

2. A purchaser can not claim protection against the lien,
if he has notice of facts, which, if he had pursued, would
have enabled him to ascertain its existence. The rule pre-
vails, which is applied when protection is claimed against a
prior right or equity—that whatever is sufficient to put a
party upon inquiry, is sufficient to charge him with notice.
If the want of notice—of actual knowledge, or information—
result from the failure to use proper diligence to ascertain
whether the fact or right exists, protection against it can not
be claimed.—*Chapman v. Glassell*, 13 Ala. 55; *Herbert v. Han-
rick*, 16 Ala. 597; *McGehee v. Gindrat*, 20 Ala. 100.

3. The mortgage to the appellees conveys, among other
things, "the entire crop of cotton and corn, which may be
made during the present year, on the plantation in Mont-
gomery county, known as Mrs. C. Lomax's plantation, which
I" (the mortgagor) "am cultivating the present year." If
the appellees were claiming a right, legal or equitable, in
the premises, acquired from the mortgagor, as paramount
to that of Mrs. Lomax in and to the lands, it would scarcely
be denied that they are charged and affected with notice of
her right and her estate. The recital of the mortgage is,
that the plantation is hers, and that the mortgagor is culti-
vating it the present year. It is equivalent to a declaration
that the fee, the ultimate reversion, resides in her, and the
right of the mortgagor is to cultivate during the year. This
is the nature, character, and extent of the right there asserted;
and it would not have been thus limited, if it had been greater.
This recital, in our judgment, is full notice to the appellees,
of the lien which the law attaches to the relation existing
between the mortgagor and Mrs. Lomax. It is notice of the
relation; and being notice of that, it is equally notice of the
lien which the law attached to it. It is not material that the
landlord has not a right of property in or to the crops. The
statute simply creates a charge—a right to the satisfaction
of the rent, superior to the right of the tenant, and all per-
sons claiming under him, so long as the crop remained on
the premises. If removed by the consent of the landlord,
the consent is a waiver of the lien. But, if removed without
his consent, the lien continues, and he is entitled to pursue
and seize the crop by attachment, to enforce the lien, until
the right of a purchaser without notice intervenes. Conse-
quently, the landlord can maintain no action which involves,
or is dependent on, a right of property, or a right of posses-
sion. If the crop is removed by, or, after removal, passes to
the possession of, a stranger having notice of the lien, who

sells or converts it, thereby rendering unavailing the statutory remedy by attachment for its enforcement, the landlord may maintain an action on the case against him.—*Hussey v. Peebles*, 53 Ala. 432.

4. The lien is an incident to the relation of landlord and tenant. It is not matter of contract—it is the creation of the law. It may be waived, or relinquished, by the stipulations of the lease, or of the contract of renting. But, in the absence of express, or inconsistent stipulations, in the contract, it springs out of the relation; and whoever is chargeable with notice of the relation, is chargeable with notice of the lien. The notice the statute contemplates, which deprives the purchaser of protection against the lien, is knowledge or information of the right of the landlord, or of facts which ought to have directed his attention to the lien. That the appellees did not know the terms of the contract of renting, or the amount of the rent which was chargeable on the cotton, is not material. If they desired the information, they had full means of acquiring it, and these means they were bound to use; and if they failed to do so, they are not entitled to protection against the lien.

5. The statute contemplates that, as long as the crops remain on the rented premises, they shall be subject to the lien; as at common law, the lien attached to goods upon the demised premises, and was not affected by any alienation of the tenant, until their removal. It was only after removal, that a right could be acquired, which would override or defeat the right of the landlord.—Taylor's Law of Landlord and Tenant, § 577. The crops being on the rented premises, is notice to all the world of the relation; and all who deal with the tenant must inquire as to the existence of the lien. After removal, the possession of the tenant, severed and distinct from his possession of the premises, is *prima facie* evidence of ownership, of the right to sell, or otherwise dispose of them. Then notice becomes necessary to charge a purchaser from him. But, in the present case, whatever right the appellees acquired, was acquired by the mortgage executed before the crops were grown—while they were in an immature state, not severed from the freehold. The delivery of the cotton subsequently was merely in subordination to the title conveyed by the mortgage, and in performance of the duty imposed by it. The appellees are not purchasers, whom a want of notice will under the statute protect. To stand in that relation, their title should have been acquired after the tenant had removed the cotton from the premises, without notice of the lien of the landlord.

The rulings of the City Court were not in accordance with

these views; and its judgment is reversed, and the cause remanded.