[Scaife & Co. v. Stovall.]

# Scaife & Co. v. Stovall.

### Statutory Claim Suit.

| 67 | 237 |
| 94 | 543 |

| 67 | 237 |
| 95 | 69 |

| 67 | 237 |
| 101 | 606 |
| 102 | 466 |

| 67 | 237 |
| 106 | 614 |

| 67 | 237 |
| 113 | 382 |

| 67 | 237 |
| 120 | 70 |

1. *Landlord's lien under former statute (Rev. Code, § 2963), did not follow crop into hands of purchaser without notice.*—Under the former statutes (Rev. Code, §§ 2961-63), giving the landlord a lien on the rented lands for the rent of the current year, and a remedy by attachment to enforce it, it was expressly provided that such attachment might be levied on the crop in the possession of the tenant, or of any one holding it in his right, or in the possession of " a purchaser from him with notice of the lien"; which words were held to prevent, by necessary implication, the lien from following the crop into the hands of a purchaser without notice, though it continued after the removal of the crop from the rented lands, and until it passed into the hands of such a purchaser.

2. *Landlord's lien; liability of crop in hands of purchaser determined by common law.*—Under the present statutes (Code, §§ 3467-78), the lien is extended and enlarged in some respects, but is silent as to the persons in whose possession the crop may be levied on by attachment, leaving that question to be determined by the principles of the common law.

3. *Landlord's lien; nature and characteristics of.*—The landlord's lien is an incident, attached by the statute to the relation of landlord and tenant, and is a simple legal right to charge the particular property with the payment of the particular debts, and it does not change the ownership of the crops, which resides in the tenant, nor put any restraint on the tenant's unqualified right to their enjoyment, except such as is necessary to preserve the lien, as the primary charge for the satisfaction of the preferred debts.

4. *Same; against whom it prevails.*—The landlord's lien prevails against the tenant, while he has possession of the crops, and against volunteers and purchasers from him, with notice.

5. *Same; against whom it does not prevail.*—The landlord's lien will not prevail against those who purchase from the true owner, for a valuable consideration without notice of the lien, and after the removal of the crops from the rented premises.

6. *Statutes; read and construed with reference to the common law.*—Statutes are always read and construed in the light of the common law, and are not regarded as infringing on its rules and principles, except so far as may be expressed, or fairly implied, to give them full operation.

7. *Same; effect of charge on property created by.*—When, by a statute, a charge is created on property for the satisfaction of a debt, unless the intention is clearly expressed, or is matter of just implication, it can not be intended that such charge has a superiority, which the common law does attach to similar charges, especially a superiority which that law has carefully withheld.

8. *Larceny; removing or selling property on which another has a claim, is not.* Although the statute (Code, § 4533), declares that a tenant, or other person, who, with an intent to hinder, delay or defraud, removes or sells, property on which another has a valid claim, may be punished as if he had stolen it, yet it does not convert the sale, or removal into larceny, nor does it prevent an innocent purchaser from acquiring a good title.

APPEAL from Barbour Circuit Court.

Tried before Hon. H. D. CLAYTON.

[Scaife & Co. v. Stovall.]

On the 17th of December, 1878, George W. Stovall procured an attachment to be issued against W. F. Shannon and A. Bethune. The attachment was issued on the ground that Shannon & Bethune, being indebted to said Stovall for rent and advances, had removed part of the crops grown on the rented premises without the consent of the landlord, Stovall, and without paying the rent. This attachment was levied on certain cotton, which was, thereupon, claimed by Scaife & Co., the appellants, who put in a claim bond, and this claim suit was tried at the Spring Term, 1879, of the Barbour Circuit Court. On the trial, the plaintiff in attachment testified that he rented certain lands in Barbour county to the defendants in attachment for 1878, and made advances to them during that year; that the rent had been paid but the defendants still owed him $200 for the advances; that the contract of renting and for advances was verbal, and that the cotton levied on, was grown on the lands rented by him to the defendants in attachment, in said year. The claimants then offered to introduce E. W. Bostick, of Scaife & Co., and Shannon, one of the defendants in attachment, to prove by them that the said cotton had been sold to Scaife & Co. before the levy of the attachment thereon, and that said Scaife & Co. purchased said cotton, and paid for it, without having any knowledge or notice that said Stovall had any lien, or any claim thereon for rent or advances made by him to the said defendants. The court refused to permit this testimony to be introduced, and to this ruling the claimants excepted. The court, at the request of the plaintiff in attachment, charged the jury, " that if they believed the evidence they must find the cotton, claimed by Scaife & Co., subject to the plaintiffs' demand." The claimants excepted to this charge. There was a verdict for the plaintiff in attachment, and also, a judgment in his favor in the claim suit. The claimants bring the case to this court, and assign the ruling of the court on the evidence, and the giving of the charge, as error.

JNO. M. McKLEROY, for appellants.—The only question in this case is, whether or not a landlord can enforce his lien for advances on a part of the crop, which the tenant has sold to a third party, and received pay for, such third person having purchased without notice of the landlord's lien. The lien of the landlord does not give him any right of property in the crops.— *Hussey v. Peeples*, 53 Ala. 432. The tenant is the owner of the crops, and has the legal title to them, and the right to sell them. The landlord's right, at common law, to distrain for rent was limited to the right to levy on the crop on the premises before the termination of

the lease.—*Lomax v. Le Grand*, 60 Ala. 537. Our statutes modifying and adopting the common law on this subject, extended the lien, and enlarged the remedy for its enforcement. By statute, prior to February 9th, 1877, the lien was so extended as to follow property wherever it may be, without regard to whether the lease had expired or not, *so long* as it continued in possession of the tenant, or any one holding in his right, or in the possession of a purchaser from him with notice of the lien of the landlord.—Revised Code, § 2963. These clauses quoted from § 2963 of the Revised Code are not carried forward into the Code of 1876, but by act of Feb. 9th, 1877 (Acts 1876–7, p. 74), the law was so modified as to leave them out. The same act declares a lien in favor of the landlord for rent and advances, authorizes the assignment of the debt, and the lien for its enforcement, and declares that the attachment to enforce it may be levied "upon the crop, or the *proceeds* thereof, and upon the articles advanced," &c.—Code, 1876, §§ 3467-3473, inclusive.

Appellee contends that the effect of this change in the statute law is to enlarge the lien so as to make it attach to the crop even in the possession of a purchaser, for valuable consideration, without notice of the lien. It seems to me that a contrary effect should be ascribed to it. Sec. 2963, Rev. Code, *extended* the lien beyond what it was at common law. The repeal of that section would have *restricted* it to what it was before, unless the repealing statute had, also, extended it in *other directions*.

Certainly there is nothing in the later law, and which was in force in the year 1878, when the lease in this case was made, which overrides the common law principles as to the rights of *bona fide* purchasers.

It surely was not contemplated by the legislature to permit landlords to follow the crops into the hands of *bona fide* purchasers without notice, who had bought in the usual course of trade, and with no means of ascertaining, perhaps, the existence of liens.

The landlord has a summary remedy, which he can, and which he ought to, enforce before the property goes into the hands of *bona fide* purchasers. If he is prevented from enforcing the summary remedy against the crop itself, then the statute permits him to attach the "proceeds," if they can be got at. Failing in this, he has his action on the case against any purchaser *with notice*. And to still further protect his rights, a penalty is denounced against the tenant who unlawfully disposes of the crop, and also, against any one who purchases with notice, and with intent to defraud. After all these remedies, and favors, and protection given to

[Scaife & Co. v. Stovall.]

landlords, it must not be construed that *bona fide* purchasers have no rights, which the law will respect. The law is intended *in pari materia*, and as applicable to both.

G. L. COMER, for appellee.—Under section 2963 of the Revised Code, an attachment could not be levied on the crop grown on rented land after it has passed into the hands of a purchaser, without notice of the landlord's lien. All the decisions of this court are based on that statute, and none of them have any reference to § 3473 of the Code of 1876, which is entirely different from the former law. The Code of 1876 (§ 3473), provides that the attachment for rent may be levied on the crop, or the proceeds thereof, and says nothing about a purchaser with or without notice, but it does expressly declare that it may be levied on the crop, wherever found, without regard to whose possession it is in. Section 4353 of the Code of 1876 makes it larceny for the tenant to remove any portion of the crop grown on rented land, on which there is a lien for rent or advances. This was done by the tenants in this case, and to permit appellants to retain the crop bought from the tenant, would be allowing them to acquire a title through a third person, who, as against the rightful owner, the landlord, committed a felony to get it—this the courts will not permit.

BRICKELL, C. J.—The single question this case involves, is, whether a landlord having a lien for rent and advances, or for either, can enforce it by attachment on the crop in the possession of a purchaser from the tenant, after its removal from the rented premises, for a valuable consideration, having no notice of the lien. To this precise question, we intend confining our opinion, which, we may remark, could not have arisen under the old statute creating and defining the lien of a landlord, upon crops grown on rented premises, the legal remedy for the enforcement of which, was an attachment to be " levied on the crop in the possession of the tenant, or any one holding it in his right, or in the possession of a purchaser from him, with notice of the lien of the landlord," and which was incorporated in the Revised Code of 1876, forming §§ 2961–63. The obvious effect and operation of that statute was, the preservation of the lien on the crop, though·the relation of landlord and tenant was dissolved, and the crop removed from the premises rented, until it passed into the possession of a purchaser without notice, and such was the construction it received.—*Governor v. Davis*, 20 Ala. 366; *Lomax v. LeGrand*, 60 Ala. 537. The lien was not so frail, and was clearly distinguishable from

that the landlord had at common law, upon goods and chattels on the demised premises, which could be enforced only so long as they remained upon the premises. They could be distrained during the term, and the right was lost by their removal before distress.

The removal of the crop, or any portion thereof, from the rented premises, without the consent of the landlord, was one of the facts which authorized a resort to attachment for the enforcement of the lien. So long as the crops remained on the premises, the tenant did not have a possession of them severed and distinct from his possession of the premises, and of itself, as is the possession of all personal property, capable of a visible, tangible possession, *prima facie* evidence of ownership. When removed from the premises, he had a separate, distinct possession, affording *prima facie* evidence of ownership, and of its incidents, the right to sell, or otherwise dispose of them. Then, if the landlord sought to follow the crop into the hands of a purchaser, and fasten the lien upon them by attachment, notice to the purchaser must have been traced.—*Lomax v. LeGrand, supra.*

This statute has been, however, repealed, and superseded by subsequent legislation which forms the 9th chapter of the 3d Part, and Title 2d, of the Code of 1876, §§ 3467–78. A lien is given the landlord not only for rent for the current year, but for advances made by him to the tenant, or made by another at his request, for which he assumes legal responsibility, whether in money, or other thing of value. The lien can be enforced by attachment by the landlord, or his assignee, whenever either the claim for rent, or that for advances is due, and the tenant, after demand, fails or refuses to make payment. Or, whether the claim is due or not, if there is reason to believe that the tenant is about removing the crop from the premises, or otherwise disposing of it. Or, when he has, without the consent of the landlord, or of his asignee, removed from the premises, or otherwise disposed of any part of the crop without payment of the claims for rent and advances. Or, when he has disposed of, or there is good cause to believe he is about disposing of, the articles advanced or obtained with the money advanced, &c., an attachment for the enforcement of the lien may be issued. The attachment " may be levied upon the crop or the proceeds thereof, and upon the articles advanced, or property purchased with money advanced or obtained by barter in exchange for articles advanced." The present, as the former statute, creates by its words, a *lien*, a charge upon the crops and other property therein designated. There is no change of ownership—that resides in the tenant, as it would have

resided in the absence of the statute. Nor is there any other restraint upon the incidents of ownership—upon the tenants unqualified right of enjoyment, than such as is necessary to preserve the lien, as the primary charge for the satisfaction of the favored debts. It is an incident to the relation of landlord and tenant attached by the statute, not having any element of a *jus in re*, or a *jus ad rem*, but a simple legal right to charge the particular property with the payment of the particular debts, in preference to, and in priority of all other debts. The lien will of course prevail against the tenant himself so long as he has possession, and so it will prevail against volunteers, and purchasers from him having notice, though upon a valuable consideration, for neither the volunteer, nor the purchaser with notice, can have any equity to protection against it, and must be presumed, unless fraud is imputed, to intend taking in subordination to it. Of this lien it may be said, that it is *secret*, for of it, notice is not required to be given in any form, and if the contracts between landlord and tenant, rest in words only, not reduced to writing, as is probably most often the case, the notice cannot be given. Such liens are not according to any principle of law known to us, allowed to prevail against purchasers from the true owner, for a valuable consideration, without notice. They differ materially from the liens known to the common law, as that of a factor, or of an innkeeper, or a common carrier, or an artificer, continuing so long only as possession remained, and ceasing whenever there was a parting with possession. The possession gave notice of the lien, or at least it was enough to excite inquiry which would lead to actual notice, and of consequence, there would never be a *bona fide* purchaser claiming in opposition to it. The ownership, and the possession, residing in the tenant, when the crop is removed from the premises, a separate, distinct possession of the crop only, must furnish a security to all who deal with him in good faith and for value, or there would be great embarrassments and but little safety in dealing in the agricultural products of the country. We speak only of purchases made after the removal of the crop from the premises, for that is the case before us, and we do not intend our opinion to extend beyond it. Against every analagous right or lien springing up from the contract or relation of parties known to, recognized and enforced by law, not the mere creature of a statute, a *bona fide* purchaser is protected. It may well be said, the law delights in his protection, and regards it as a wise policy, founded in the demands of justice, promotive of commerce, to save him from mere charges or incumbrances of the ownership, of which

[Scaife & Co. v. Stovall.]

he cannot by any prescribed measure of diligence acquire notice. (Statutes are always read and construed in the light of the common law, and are not regarded as infringing upon its rules and principles, save so far as may be expressed, or fairly implied to give them full operation.) When a charge merely upon property is created by statute—a mere primary right for the satisfaction of a debt, it cannot be supposed, unless the intention is clearly expressed, or it is matter of just implication, that it is intended the charge shall have a superiority, the common law does not attach to similar charges, and especially a superiority that law carefully withholds. Though it was matter of necessary implication from the words of the former statute, that the crop could be levied on in the hands of a purchaser from the tenant with notice of the lien, that it could not be taken from a purchaser without notice, in that respect, the statute was merely in recognition of the principle of the common law, which would have prevailed if it had been silent. All that can be said is, that the present statute is silent as to the persons in whose possession the crop may be levied on by attachment, leaving that question, if a controversy arises as to it, to be determined by the common law, and that law intervened for the protection of the *bona fide* purchaser, who has equal equity with the landlord, and the legal title attached to it. The reasonable implications from the statute support this view. For the removal, or the intended removal of the crop, furnishes a cause for the attachment of it, before the claims, which are liens, fall due. The reason must be that the removal endangers the lien, and one of the perils operating its defeat, was, it is fair to presume, that the rights of a *bona fide* purchaser might intervene in consequence of the removal. The attachment may also be levied upon the *proceeds* of the crop, which indicates that a conversion of it by sale or otherwise, might be made, and a purpose to extend the lien to whatever was realized therefrom by the tenant. There is no express abrogation of the principle of the common law protecting a *bona fide* purchaser from mere liens of which he has no notice, and no provision which would authorize a construction that there was an intention to abrogate it. Protection to such a purchaser, renders the statute harmonious in its operation with the principle of the common law in reference to all analogous liens or charges, and saves the lien from clogging and embarrassing fair commerce in agricultural products.

We cannot attach any force to the argument that because a tenant, or other person, who, with an intent to hinder, delay, or defraud, removes or sells property upon which an-

[Shields v. Atkinson.]

other has a valid claim, may be punished as if he had stolen it (Code of 1876, § 4353), therefore, no good title can be derived from him. The statute does not, as is argued, convert the sale or removal into larceny, and an indictment for larceny founded on it could not be sustained.—*La Vaul v. State,* 40 Ala. 44. It is in recognition of the ownership, and visits the punishment of larceny upon the fraudulent exercise of the rights and incidents of ownership.

The rulings of the Circuit Court are not in conformity to these views, and its judgment must be reversed, and the cause remanded.