# Lake & Marshall *v.* Gaines & Co.

| 75 | 143 |
|----|-----|
| 105 | 280 |

| 75 | 143 |
|----|-----|
| 130 | 401 |

*Action by Landlord against Purchaser from Tenant of Crop grown on Rented Lands.*

1. *Error not presumed, but must be shown.*—On appeal, error can not be presumed, but must be affirmatively shown; and hence, an exception reserved to the action of the primary court in overruling a motion to strike an amended complaint from the file, must be disallowed, when the record contains only one count, and it does not appear whether it is the original or an amended complaint.

2. *Admissibility of evidence; when error not shown.*—When evidence, on its face irrelevant, is offered, and to its admissibility objection is made, if any connecting facts can be shown, rendering it relevant, the party offering it should inform the court of the manner in which he proposes to connect it so as to show its relevancy; and if the record, on appeal, fails to show that this was done, an exception to the ruling of the primary court sustaining the objection, will be disallowed.

3. *Same; when exception can not be considered.*—Where objection is sustained to offered evidence, partly legal, and partly illegal, and the record fails to show whether the objection was to the whole, or only to a part, and if to a part, what part, an exception to the ruling of the primary court sustaining the objection can not, in this condition of the record, be considered.

4. *Lien of landlord on tenant's crop; right of recovery against stranger receiving and disposing of crop; application of payments.*—During 1879, G., who was engaged in merchandising, rented to S. for the year a plantation owned by him, and, as landlord, made advances to him, on which, at the end of the year, there was a small balance unpaid. On 1st January, 1881, V. became a part owner and tenant in common with G. in the plantation, and S. renewed and continued his lease for that year, and G. continued to advance to him until March of that year, when V. became a partner with him in merchandising, and, under the firm name of

G. & Co., they continued to advance to S. as their tenant; and the same relation was continued through the year 1881, and during that year some advances were also made. At the time the partnership was formed between G. and V., the former transferred to the partnership the claim on S. for advances. In March, 1880, when the partnership was formed, the amount due from S. to G. for advances, including the unpaid bala.. e for 1879, amounted to $117; and, at the end of 1880, the amount due for ad-- vances was $490, when S. made a payment reducing it to $216, which was, during 1881, increased by advances made during that year. In the spring of 1881, S. made arrangements with L. & M., merchants, for advances, and gave them, as security, a crop-lien note and also a mortgage on the crop, which were duly recorded; and during that year, he obtained from them between $400 and $500 in advances; and in latter part of the year, they received nine bales of cotton grown on said plantation, sold it, and applied the proceeds to their claim against S. At the time L. & M. agreed to advance to S., they knew he was the tenant of V. & G., and when they received the cotton, they knew it had been grown on said plantation, and that G. & Co. claimed a lien on it for advances made as landlords. *Held*, in an action by G. & Co. against L. & M.,

(a) That plaintiffs were entitled to recover the amount of S.'s debt to them for the advances made to him, with interest thereon, not to exceed the amount L. & M. realized from the sale of the cotton received by them, with interest thereon.

(b) *Quære*—If any question arises as to the right to recover for the advances made before the partnership was formed between G. and V., must not that portion of the account be considered as paid and eliminated from the suit, under the principle declared in *Lee v. Tannenbaum,* 62 Ala. 501, an l *Lewis v. Dillard,* 66 Ala. 1?

5. *Same; nature of.*—The statute giving to a landlord a lien on his tenant's crop for advances is paramount to, and much more comprehensive than the lien a stranger may contract for under the crop-lien law; the court declaring that it is "very difficult to define, as matter of law, what articles of commerce are beyond the pale of the very comprehensive words" contained in the statute.

APPEAL from Mobile Circuit Court.

Tried before Hon. WM. E. CLARKE.

The nature of the action, and the material facts disclosed by the evidence are stated in the opinion. It may be added, however, that an itemized statement of the advances obtained by the tenant, Scott, from the plaintiffs, is made an exhibit to the bill of exceptions, from which it appears that the principal items were for provisions, dry-goods, teams and farming implements; there were also charges for tobacco, whiskey and snuff. The evidence tended to show that the cotton received from Scott by the defendants was worth "from $45 to $50 per bale;" and that the defendants received, as the net proceeds from the sale thereof, $401.11, which was insufficient to pay what Scott owed them. The bill of exceptions purports to set out all the evidence.

The court charged the jury, at the plaintiffs' written request, that if they " believe the evidence, they must find for the plaintiffs, and assess the damages at the amount they find,

from the evidence, Scott's debt to Gaines & Co. for advances to have been, with interest on the same; but, in no event, to exceed the proceeds of the sale of the cotton, with interest thereon from the time it was sold by defendants." To this charge the defendants excepted; and they requested the following charge in writing, which was given: "The jury, in ascertaining what is the indebtedness of Scott to plaintiffs, for which they had a lien, may look to all the evidence in the case; and they can strike out any items which the proof does not show were for the sustenance or well-being of the tenant or his family, for preparing the ground for cultivation, [and for] cultivating, gathering, saving, handling, or preparing the crop for market." The trial resulted in a verdict and judgment in favor of the plaintiffs for $410.57.

The charge given at plaintiffs' request, and the rulings on the pleadings and evidence, noted in the opinion, are among the assignments of error here made.

JAMES COBBS,. for appellants.

TOULMIN, TAYLOR & PRINCE and PILLANS, TORREY & HANAW, contra.

STONE, J.—There was a motion in the circuit court to strike the amended complaint from the file, and an exception to the action of the court in overruling the motion. We find but one count of a complaint in the transcript, and can not tell whether it is an original or an amended count. This exception must be disallowed, because there is nothing in the record by which we can determine whether or not there was error in the ruling. Error can not be presumed, but must be affirmatively shown.—*McWilliams v. Phillips*, 71 Ala. 80.

Gaines, one of the plaintiffs, being examined as a witness, was asked on cross-examination, "If he had not, since this suit was brought, received from Abe Lassiter $20.70, which he had not paid over to Mr. Lake." This was objected to, and ruled out. What relation this had, or could have to the case is not shown. Without stating any further objection to the testimony the question tended to elicit, it is enough that the record nowhere shows Lake was entitled to the money, or that Gaines was under any obligation to pay it out to any one. If any connecting facts could have been shown, which would have rendered the testimony relevant, the defendant, when the objection was made, should have informed the court in what manner he proposed to connect the testimony, so as to show its relevancy.—1 Brick. Dig. 809, §§ 83, 84. And if the connecting testimony is not afterwards introduced, then the testi-

mony thus received should be ruled out, on motion of the opposite party.

There was objection sustained to testimony proposed to be given by Lake as a witness, the extent of which we can not understand. We can not know whether the rejection and exception related to the whole of the testimony previously stated, or only to a part; and if a part, to what part. Some of the mass of his testimony was legal, and some illegal. Pritchett's threat to seize two bales of the cotton was clearly illegal, and other portions of the evidence were irrelevant. In the state of this record, we can not pass on this question.—1 Brick. Dig. 247, §§ 72, 73.

The only remaining question relates to the charge of the court, which was given at the written request of plaintiffs. Submitting the question of the credibility of the witnesses to the jury, this charge pronounced on the legal effect of the evidence.

During the year 1879, H. L. Gaines, using the name of H. L. Gaines & Co., was engaged in merchandising, and also owned a plantation, of which one Scott became tenant for that year. Gaines made advances to Scott as his tenant, and at the end of the year, after paying the rent, there was a small unpaid balance of the debt for advances. On the 1st January, 1880, one V. P. Gaines became part owner, or tenant in common with H. L. Gaines in said plantation, and Scott renewed and continued his lease for that year, and H. L. Gaines continued to advance to him as tenant. In March, 1880, V. P. Gaines became a partner in the mercantile establishment, and it continued business in the firm name of H. L. Gaines & Co., and continued to advance to Scott as their tenant. The same relation was continued through the year 1881, and some advances were made during that year. At the time the new mercantile firm was formed in March, 1880, the old firm, consisting of H. L. Gaines alone, transferred the claim on Scott for advances to the new firm, consisting of H. L. and V. P. Gaines, who are the plaintiffs in this action. There was a small balance due for advances, as we have said, for the year 1879, and there were advances made by Gaines between the 1st of January, 1880, and March of that year, when V. P. Gaines became a partner. The advances made during this interval were probably a fraction over one hundred dollars. Including the small balance due for advances in 1879, the amount for advances March, 1st, 1880, when V. P. Gaines became a partner, is claimed to have been one hundred and seventeen dollars; and such is the tendency of the testimony. At the end of the year 1880, the account for advances, as the testimony tends to show, was four hundred and ninety dollars. Three was then paid by Scott, by sale of cotton, something over two

[Lake & Marshall v. Gaines & Co.]

hundred and seventy dollars, leaving an unpaid balance of two hundred and sixteen dollars. There were also items of charge for the year 1881, swelling the account to the sum sued for.

In the spring of the year 1881, Scott made arrangement with Lake & Marshall to make him advances that year, to enable him to make a crop; and gave them a crop-lien note, and mortgage on his crop, to secure payment for such advances. These papers were duly acknowledged and recorded. He obtained from them between four and five hundred dollars in advances, under this contract. At the time Lake & Marshall entered into the contract to advance, they knew Scott was tenant on the lands of plaintiffs; and when they received the cotton after mentioned, they knew it had been grown in 1881, by Scott, on lands rented from Gaines & Co., and that Gaines & Co. claimed a lien on it for advances made as landlords. They received nine bales of the cotton so grown, sold it, and applied the proceeds to their claim against Scott. This suit was instituted by Gaines & Co. to recover so much of the proceeds of the cotton as was necessary to pay them for the balance of the advances made by them.

The statute giving to a landlord a lien on the crop of his tenant for advances, is paramount to, and much more comprehensive than the lien a stranger may contract for, under what is known as the crop-lien law.—Code of 1876, §§ 3467, 3286. Under the section last cited, a lien, to be effective, must be declared in writing and recorded, and can only be created and enforced, for "advances in horses, mules, oxen, necessary provisions and farming tools, or money to purchase the same." Beyond articles falling within these enumerated classes, a stranger to the contract of letting can acquire no valid crop-lien save by mortgage. Not so with the landlord. He requires no written declaration of lien, but the sum is secured to him by law, as an incident to the letting. In addition to the rent for the current year, he has a lien "for advances made in money or other thing of value, whether made directly by him, or at his instance and request by any other person, or for which he has assumed the legal responsibility at or before the time at which such advances were made, for the sustenance or well being of the tenant or his family, for preparing the ground for cultivation, or for cultivating, gathering, saving, handling, or preparing the crop for market." These are certainly very comprehensive words, and we would find it very difficult to define, as matter of law, what articles of commerce are beyond the pale of these comprehensive words. We will not now undertake to draw the line. So, if the advances are not paid for in the current year, the residuum becomes a lien on the next crop, if the tenancy continues; and the landlord may assign his

[Gusdorf & Co. v. Ikelheimer & Co.]

claim, with all its liens and remedies, to another.—Code, §§ 3469, 3470.

It would seem that the articles which go to make up plaintiff's claim, on which they base their right to recover the proceeds of the cotton, are, none of them, shown to be outside of the provisions of the statute ; and hence, if the testimony was believed, plaintiffs were entitled to recover the amount of Scott's debt to them for the advances made to him, with interest thereon, not to exceed the amount Lake & Marshall realized from the sale of the cotton, with interest thereon. · And if any question arises as to the right to recover for the goods advanced before March 1st, 1880, must not that portion of the account be considered as paid, and eliminated from this suit, under the principle declared in *Lee v. Tannenbaum*, 62 Ala. 501, and *Lewis v. Dillard*, 66 Ala. 1 ?

We find no error in the record, and the judgment of the circuit court must be affirmed.