[Bush & Co. v. Willis.]

# Bush & Co. *v*. Willis.

## *Action of Assumpsit.*

1. *Landlord and tenant; when purchaser of crop grown on rented premises not a bona fide purchaser.*—Where one purchases cotton with knowledge that is was raised upon rented premises, or with notice of facts which would reasonably put the purchaser upon inquiry, and which, if followed up, would result in a knowledge that such cotton was raised upon rented lands, such purchaser is not a *bona fide* purchaser for value without notice as against landlord.

2. *Same; lien of landlord continues from year to year until payment of rent.*—Under the provisions of the statute which declares that the lien of a landlord continues and attaches to the crop of a succeeding year (Code, § 2705), any unpaid portion of the rent or advances made by the landlord for a current year becomes advances to the tenant for the next succeeding year, and if not paid that year, it partakes of the nature of advances for the following year, and this process continues so long as the tenancy lasts, and for such unpaid portion the landlord has a lien upon the crops grown by the tenant for each year.

3. *Same; lien does not exist in favor of landlord as indemnity for loss of stock.*—Where the owner of land leases the land and certain number of mules for which his tenant agrees to pay a fixed rent, and in the lease contract the tenant agrees to pay certain sums in the even any of the mules die or are lost, such agreement to pay for the death or loss of the mules is a mere stipulation by the tenant to indemnify him against loss; and if one or more of the mules is lost, the amount fixed as an indemnity is a personal obligation, for which there exists, under the statute, no lien in favor of the landlord.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

This suit was instituted on April 4, 1898, by the appellee, Byrd C. Willis, against the appellants, J. C. Bush & Co. As originally filed the complaint contained four counts. The first and second counts sought to re-

cover $145 as part of the proceeds from a sale of the defendants of certain cotton received from one G. W. Keith on December 13, 1897, on which bales of cotton the plaintiff then had a landlord's lien for rent and advances. The third count sought to recover $145 for money had and received for the use of the plaintiff. The fourth count was upon the common count for money loaned and for goods sold.

The defendant demurred to the first and second counts, which demurrers were sustained. To the other counts of the complaint the defendant pleaded the general issue, upon which pleas issue was taken and the cause was tried.

On the trial of the case it was shown that the cotton involved in the suit was grown in the year 1897 upon lands rented by G. W. Keith from the plaintiff Byrd C. Willis; that said cotton was shipped by Keith to the defendants and was by them sold and the proceeds thereof applied to the payment of an indebtedness due from said Keith to the defendants for advances made to him during the year 1897.

There was evidence introduced by the plaintiff tending to show that the defendants had notice or knowledge of facts which would have led them to discover that the said Keith was a tenant of the plaintiff. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently shown in the opinion.

In the court's general oral charge, among others, the following instruction was given to the jury: "Wherever a balance is due for one year that is carried forward as an advancement for the next year and that process is continued, if the lease is continued, and goes on from year to year." The defendant separately excepted to this portion of the courts general charge, and also separately excepted to the courts giving at the request of the plaintiff the following written charges: (1.) "The court charges the jury that a person is chargeable with knowledge of the landlord's lien who knows that the property purchased is the product of rent lands." (2.) "If the jury believe from the evidence that G. W. Keith rented the plaintiff's lands in Washington county, Ala-

bama, for a period of three successive years from 1895 to 1897 both inclusive, and raised cotton thereon and removed the same therefrom in 1897 without paying the rent thereof for said year and without the consent of the plaintiff, and shipped the same to the defendants and they sold same and failed and refused to pay said rent to the plaintiff, and the defendants before they sold said cotton had knowledge of any fact sufficient to put them on inquiry, which is prosecuted with reasonable diligence would have disclosed to them the fact that said cotton was raised on the land of plaintiff by said G. W. Keith in said year, they must find for the plaintiff, and it is immaterial from what source or by what method or at what time the information was obtained." (3.) "If the jury believe from the evidence that Keith owed Willis rent and that defendants knew that part of the cotton received by them was raised upon rented land, or had notice of the fact that would reasonably put a merchant upon inqury as to such rental, and which, if followed up by diligent inquiry, would have resulted in knowledge on the part of the defendants of such renting from the plaintiff, they must find for the plaintiff."

There were other charges requested by the defendants and the refusal to give each of which the defendant separately excepted, but under the opinion it is unnecessary to set out these charges in detail.

There were verdict and judgment for the plaintiff, fixing his recovery at $176.41. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

BESTOR, GRAY & BESTOR, for appellants, cited *Foxworth v. Brown Bros.*, 120 Ala. 59; *White v. Corbin*, 109 Ala. 154; *Atkinson v. Turner*, 96 Ala. 214; *Wilson v. Stewart*, 69 Ala. 302; *Scaife v. Stovall*, 67 Ala. 237.

J. BLOCKER THORNTON and PETER J. HAMILTON, *contra.*—The lien continues and attaches to the crop of succeeding years so long as the tenancy lasts.—*Cockburn v. Watkins*, 76 Ala. 486; *Thompson v. Powell*, 77 Ala. 391. A continuation of tenancy under several leases, all for successive terms, constitutes but one

term.—*Abraham v. Nicrosi*, 87 Ala. 173; *Webber v. Shearer*, 6 Hill. (N. Y.), 20.

A purchaser of crops is chargeable with notice of landlord's lien and his duty is to inquire of the existence of such lien.—*Kelly v. Eyster*, 102 Ala. 325; *Foxworth v. Brown*, 114 Ala. 299; *Lomax v. LeGrand*, 60 Ala. 537; *Lake v. Gaines*, 75 Ala. 143; *Boggs v. Price*, 64 Ala. 514; *Atkinson v. James*, 96 Ala. 214; *Weil v. McWhorter*, 94 Ala. 540; *Wilkinson v. Ketler*, 69 Ala. 441.

TYSON, J.—The defendants were factors and merchants in the city of Mobile and took from Keith, who was the tenant of plaintiff, a mortgage upon all crops to be raised by him during the year 1897, to secure a note for $161.67 and "all further or additional supplies of goods, over and above the amount of said note, advanced and furnished." The notes secured by this mortgage also contained a stipulation binding Keith to ship to defendants during the season of 1897-98 fifteen bales of cotton or pay them commissions on any deficit at the rate of $1.00 per bale. This note and mortgage bears date of March 22, and matured November 1, 1897.

Defendants made advances to the extent of $863.52 and received twenty-nine bales of cotton from Keith, which were raised by him, upon the lands he had rented from plaintiff. Of the twenty-nine bales, twenty-eight were sold by defendants and the proceeds placed to Keith's credit on account of the advances made to him, which more than paid the amount of his indebtedness to the defendants.

The defendants were not *bona fide* purchasers for value without notice.—*Manasses v. Dent*, 89 Ala. 568. Nor were they even cotton factors or agents engaged in the business of selling cotton for Keith which had been consigned to them or stored with them, for sale, upon which they made advances, clothing them with certain rights and liens in relation thereto.—*Barnett v. Warren*, 82 Ala. 561. They occupy the position of mortgagees having a lien upon the cotton, which went into their possession, subordinate to the lien of the plaintiff if he had one. The lien was created either before the

crops were planted or while growing and before their removal from the premises. And as said by this court, in *Waite v. Corbin*, 109 Ala. 155: "Our attention has been called to no case, and we know of none, where it has ever been held that a purchaser who purchased property from a tenant while the property was upon rented premises, upon which a landlord held a lien, by his purchase acquired a right superior to the landlord, there being no question of waiver or estoppel. In addition to the many decisions upon this question, the statute is specific in declaring that 'a landlord has a lien, which is paramount to, and has a preference over all other liens on the crop grown on the rented lands for rent for the current year,' etc. [and for advances, etc.]—Code of 1886, § 3056; [Code of 1896, § 2703]. The many decisions cited to this section of the Code are uniform in holding that the landlord's lien continues in force and paramount so long as the property remains on the rented premises, and follows its removal from the premises. After removal from the premises it remains paramount against all persons, except such as, for value, without notice, or knowledge of facts calculated to put them on notice, of the existence of the landlord's lien, acquire a right to or lien upon the property.—*Lomax v. LeGrand*, 60 Ala. 537. The fact that the tenant declared that he owned the land, or the mortgagee may have believed that he was the owner, and took his mortgage in good faith, his belief and action not having been superinduced by the landlord, cannot avail against the right of the landlord." See also *Manasses v. Dent, supra; Dunlap v. Steele*, 80 Ala. 424; *Hamilton v. Maas*, 77 Ala. 283; *Dowling v. Wall*, 114 Ala. 58; *Beal v. Folmar*, 122 Ala. 414.

The remaining question is, did the plaintiff have a lien upon the crops of Keith raised by him on the rented lands during the year 1897, for the rent and advances claimed? The lien is based upon an alleged claim for a balance of $50 due on rent for the year 1895 and for advances claimed to have been made during that year to the extent of $75. We shall separate in our discussion the two items, not because we perceive that they stand upon any different footing in so far as the dig-

[Bush & Co. v. Willis.]

nity of the lien involved as respects them is concerned, but for the purpose of showing that as to $50 the plaintiff had a lien upon the cotton, if Keith owed it, and as to the $75 claimed as advances he had no lien, assuming Keith's liability for it.

As to the $50 item there is a dispute in the evidence as to whether it had not been released by plaintiff in order to induce one Wager to pay $400 for Keith on the rent for 1895. Assuming Keith's liability, the point is made and insisted upon by appellants that under the statute the plaintiff could have no lien upon the crops grown on the rented lands beyond the next succeeding year, 1896, the tenancy being for the years 1895, 1896 and 1897. The statute is as follows: "When the tenant fails to pay any part of such rent or advances and continues his tenancy under the same landlord, on the same or other lands, the balance due therefor shall be held and treated as advances to him by the landlord for the next succeeding year, for which the original lien for advances, if any remain unpaid, shall continue for the articles advanced or property purchased with money advanced or obtained by barter in exchange for articles advanced and for which a lien shall also attach to the crop of such succeeding year."—Code, § 2705.

In *Cockburn v. Watkins*, 76 Ala. 488, speaking to the point here under consideration in construing section 3469 of the Code of 1876, this court said: "This lien is not confined to one crop, but the tenancy continuing, laps over from year to year."

It is contended, however, that the section under construction in that case has been changed and that the difference in phraseology impairs the force of the language above quoted as authority in construing the present statute (section 2705 of Code). In so far as the point here involved is concerned the difference in the language between the two is of no significance. It is further urged against the opinion in that case, that what was said on this point was *dicta;* and if not *dicta*, it was clearly wrong. A casual reading of the facts of the case will disclose that what was said was not *dicta* but was pointedly and directly presented and was neces-

sary to a decision of the case, and furthermore we cannot concur in the proposition that it is unsound, but on the contrary, adhere to it.

By the plain language of the statute any unpaid portion of the rent or advances, becomes advances to the tenant for the next succeeding year and if not paid by the tenant that year, it partakes of the nature of advances for the next succeeding year, and this process continues so long as he continues his tenancy, for which the landlord has a lien upon the crops grown by him.—*Lake v. Gaines*, 75 Ala. 143. The result is, that the defendants are liable for the $50 item, if Keith owes it.

This brings us to a consideration of the $75 item which is claimed to be the value of two mules advanced by plaintiff to Keith during the year 1895. The lease was for the lands, a steam gin and mill and four mules for which Keith was to pay $450 rent. It also contained this provision: "It is also agreed that if any of the mules die or are lost G. W. Keith is to pay $37.50 for each loss." The only evidence in the record as to the death or loss of any of the mules appears in the testimony of Thornton, one of the plaintiff's attorneys. He knew nothing of the existence of the fact, but was permitted without objection to testify to a conversation with Keith had on the 28th of December, 1897, in which he said to Keith, "you owe us $75 for two mules you lost or disposed of in 1895," * * * to which Keith replied "I know that and you should help me out. I would pay every cent if I had the money now." Confessedly all this was illegal and incompetent as against the defendants, who were not present, occurring as it did after the delivery of the cotton to them and a sale of it by them, as was the account rendered by plaintiff to Keith, to which objection was made. But as we have said it was admitted without objection and we will consider as established the fact that two of the mules were lost in 1895, and that Keith under the provisions of the lease above quoted became personally liable to plaintiff in the sum of $75. But it by no means follows from this, that he had a lien upon the crops for 1895 or any succeeding year for the $75. Whatever portion of the

[Bush & Co. v. Willis.]

$450 was for the rent of the mules, that portion constituted advances under the statute for which plaintiff has a lien.—Code, § 2703. It is only on account of its being advances that he has a lien. It is clear that if the statute only conferred a lien for rent for the land, the plaintiff would have no lien for the value of the rent or hire of his mules. Nor could he create a statutory lien for their hire if it did not exist, by incorporating the value of it in a rent note for the land, for the reason that the statute creates the lien predicated upon the contractual relation of landlord and tenant.—*Hamilton v. Maas, supra.* Under the statute the landlord has a lien upon the crops of the tenant "for advances made in money or other things of value," etc. The $75 here claimed was to be paid, not as rent or hire for the two mules, but only because due and payable by the very terms of the stipulation in case of their death or loss— a mere indemnity by Keith to plaintiff. The contract did not involve a sale by plaintiff to defendant of the mules nor can the stipulation under consideration be construed as one of hire. The mules remained the plaintiff's, and the manifest purpose of the stipulation was to indemnify him against loss in case of the death or loss of any one or all of the mules during the continuation of the rental contract. It is clear to us, conceding the loss or death of the two mules, the plaintiff has no lien upon the cotton for the $75 and should not be allowed to recover it.

Many exceptions were reserved by defendant upon the trial, but it will serve no good purpose to review them in detail, and we will not do so. Suffice it to say that the rulings of the court were not in harmony with the principles here announced.

Reversed and remanded.