# Boyett & Wimberly *v.* Potter.

*Action for Money Had and Received.*

1. *Advances to make crop; what articles are within statute.*—Fertilizers not being among the articles specially mentioned in the statute (Code, § 3286), a written instrument executed in consideration of a horse advanced or sold on credit, which declares that, without such advances, it would not be within the power of the maker to procure the necessary "teams, provisions, farming implements and *fertilizers* to make a crop," does not create a statutory lien, though it may have effect as a mortgage.

2. *When action lies for money had and received.*—An action for money had and received is an equitable remedy, and lies whenever the defendant has received money which in good conscience belongs to the defendant; and neither privity of contract, nor an express promise to pay, is necessary to maintain it.

3. *Same.*—When the name of a third person is inserted as mortgagee by mistake, caused by using a merchant's printed form without erasing his name, and the personal property conveyed afterwards comes into possession under a junior mortgage, and is sold by him, a person claiming by transfer and assignment from the first mortgagee may maintain an action against him for money had and received.

4. *Presumption as to character of wife's estate.*—In the absence of averment and proof to the contrary, property held by a married woman is presumed to be held as a statutory estate.

5. *Mortgage by husband, on crops to be raised on wife's land.*—The husband may, by mortgage or otherwise, anticipate the crops to be raised on lands belonging to the wife's statutory estate, when necessary to procure supplies, teams, implements, or other things essential to carrying on farming operations.

6. *Earnings of wife and minor son.*—The earnings of the wife during coverture, and the earnings of an unemancipated son, alike belong to the husband and father; his renunciation of his rights, in favor of his wife, is void as against his existing creditors; and it is subject to revocation, and is revoked by a mortgage executed before the consummation of the gift by delivery; as where the subject of the gift is the crops to be raised by the labor of the wife, and they are mortgaged by him before they are planted.

APPEAL from Butler Circuit Court.

Tried beford Hon. JOHN P. HUBBARD.

VOL. LXXX.

[Boyett & Wimberly v. Potter.]

This was an action for money had and received commenced in February, 1883, by Thomas. F. Potter against Boyett & Wimberly, a mercantile firm of Greenville, Ala. The amount in controversy was the proceeds of certain cotton sold by the defendants; the plaintiff asserting title thereto under the following instrument which was introduced in evidence: "State of Alabama, Butler county, Greenville, Ala., Februry 6th, 1882, $50.

"On the 1st day of October next, I promise to pay to Boyett & Wimberly, or order, the sum of fifty dollars, in consideration of poney this day advanced by them, which advances were obtained by me, *bona fide*, for the purpose of making a crop on my plantation in Butler county, Ala., during the year 1882; and without such advances it would not be in —— power to procure the necessary teams, provisions, farming implements and fertilizers to make a crop on said plantation. It is agreed and understood that this note is made to secure a lien on all my stock, and whole crop raised by me on my land or elsewhere in the year 1882. And I hereby waive all my right of exemption under the constitution and laws of the State of Alabama of any property, or that may be hereafter owned by me as to the collection of this debt, and to secure payment of the same, I hereby convey to them one horse poney, "old," all my live stock, and also the entire crop of cotton, corn, and other produce raised by me during the year 1882, on my land or elsewhere; all or any of which property they may, after this note matures, and for the payment thereof, seize and sell at public auction for cash before the courthouse in Greenville, Ala., after posting for ten days a written notice of sale on said courthouse door. I agree to pay all attorney's fees, or other expenses, in recording and collecting this note, and further certify that this property is unincumbered."

Attest:  J. F. BARGANIER, }          J. M. GAFFORD.
         A. B. DULIN.         }

This instrument, as shown by the bill of exceptions, was executed to Boyett & Wimberly by mistake; the actual intent and purpose of said Gafford being, as conceded, to make it payable to one D. B. Taylor, who testified, as a witness for the plaintiff, Potter, who sues as the transferee of said Taylor, "that he, Taylor, sold to J. M. Gafford a horse, and having no blanks of his own went into the store of Boyett & Wimberly and asked A. B. Dulin to fill him out a blank for the horse, and that A. B. Dulin filled out this blank and did not erase the names of Boyett & Wimberly thereon printed and insert Taylor's, thus in this way made it payable to Boyett & Wimberly at the time, instead of to witness, Taylor; but this was unknown to witness at the time and was not known to him till he traded

[Boyett & Wimberly v. Potter.]

it to Potter.   That afterwards, when he (D. B. Taylor) sold the contract to plaintiff he discovered that the paper was made payable to Boyett & Wimberly, and that he, Taylor, requested Dulin to write the transfer, and he did so." The defendants, whose claim is founded on an instrument similar in its terms to the above, objected to the testimony of said Taylor touching the execution of this paper, and its subsequent endorsement to Potter, and duly excepted to the ruling of the court permitting it to go to the jury.

Said Gafford, as further shown by the bill of exceptions, died in October, 1882, and the cotton in question was sold by his widow and a minor son to the defendants shortly thereafter. The remaining facts, and the character of the claim asserted by Boyett & Wimberly to the property in controversy, are sufficiently stated in the opinion.

GAMBLE & RICHARDSON, for appellants.

STALLINGS & WILKINSON, contra.

CLOPTON J.—Neither of the instruments set out in the record—the one under which the plaintiff claims, nor the one under which the defendants claim—is sufficient to create a statutory lien. It has been frequently and well settled, that the statute, giving liens for advances to make crops, which displace and override all other liens though of prior date, except the lien of the landlord for rent and advances, must be strictly construed; and the note, or obligation must, in its terms, substantially conform to the requirements of the statute. The lien can only be created as security for a debt, having for its consideration an advance of one or more of the articles expressed — "horses, mules, oxen, or necessary provisions, farming tools and implements"—or money to purchase the same. However essential other things may be to make a crop, the statutory lien can not be extended by the contract of the parties to include them. And the advance must be made at the time of the execution of the instrument; contemplated future advances are not embraced.—Evans v. English, 61 Ala. 416; Tison v. Peo. Sav. & Lo. Ast'n. 57 Ala. 323; Schussler v. Gaines, 68 Ala. 556. The written instruments, however, may be regarded as mortgages, and the rights of the parties determined accordingly.

The action is brought by appellee to recover money, the proceeds of cotton received and sold by defendants, his right to a recovery being based on the ground, that the cotton was included in the mortgage executed by Gafford, Sr., to Taylor, and transferred to him. It is insisted, that as the mortgage is made to the defendants as mortgagees, though by mistake, and

[Boyett & Wimberly v. Potter.]

the intention was to have made it in Taylor's name, the legal title to the property is thereby vested in the defendants, and that the plaintiff can not maintain the action. The action for money had and received is an equitable remedy, and may be supported, when the defendant has received money, which in good conscience he ought not to retain, and which, *ex æquo et bono*, belongs to the plaintiff. In such case, the law implies a promise to pay, and privity of contract is not necessary. The legal title will not be regarded, unless it carries a legal right to retain the money.—*Harper v. Claxton*, 62 Ala. 46 ; *P. & N. Ins. Co. v. Tunstall*, 72 Ala. 142. The defendants do not claim any interest in the debt secured by the mortgage. ·The consideration wholly moved from Taylor, and he was entitled to the proceeds. Though the mortgage may have operated to pass the legal title to the defendants, a right and equity in Taylor were created which a court of equity would compel them to observe and carry into effect. By the transfer and delivery of the debt and mortgage, his right and equity passed to the plaintiff, entitling him to the money secured. To this purpose, the assignment in the names of the defendants by their bookkeepers was immaterial and unnecessary. If the mortgage is a lien on the cotton received and sold by them, entitling the plaintiff to the proceeds of sale in priority of any lien or claim asserted by the defendants, he may on his equitable right and title maintain the action.

The mortgage was made February 6, 1882. The defendants claim the right to retain the money, by reason of the cotton having been delivered to them under a mortgage executed in April, 1882, by the wife and minor son of the mortgagor in the first mortgage ; and the right of the wife and son is rested on a gift of the crop, before it was planted or before anything was done towards making a crop, by the husband and father, he agreeing to furnish a horse. Mrs. Gafford testified orally, that the land, on which the cotton was raised, is her property, that she bought it from her husband, and has been in possession, claiming it, for nineteen years. The court instructed the jury, that if the gift was made after the mortgage under which plaintiff claims, it was inoperative as against the lien ; and if made before, Gafford, Sr., had the right to disaffirm and revoke it, and giving the mortgage was a revocation though the land may be Mrs. Gafford's. The instruction involves the authority of the husband to mortgage the crops raised on lands the statutory separate estate of his wife, and the validity of a gift of the crops, before planted, to her and his minor child, as against the mortgagee. We say *statutory* separate estate, for the reason that no conveyance was produced showing the character of the estate. In the absence of proof, that a deed or

[Boyett & Wimberly v. Potter.]

other instrument was made creating an equitable separate estate, or that such was the character of the consideration paid, the presumption arises, that the land is her statutory separate estate.

The authority of the husband over the rents, income, and profits of the wife's statutory separate estate has been heretofore considered in several cases. He is entitled to receive and control them, without being required to account therefor with the wife, her heirs or legal representatives, charged with a trust to apply them to the support and maintenance of the family, not expressly declared by the statute, but a duty devolved by judicial construction. In legal contemplation, he is regarded as having the ownership, the entire interest in the rents, income and profits during the continuance of the relation of husband and trustee, and may make a valid disposition and transfer of such ownership.—*Murphree v. Singleton*, 37 Ala. 412. Though not liable to the payment of his debts so long as they remain merely income and profits, when used by the husband in the purchase of property, the property purchased belongs to him with all the incidents of property, and is subject to the payment of his debts.—*Daffon v. Crump*, 69 Ala. 77. The appropriation of them to his own use is not a conversion of the property of the wife, though it may be cause of removal from the trusteeship, and such appropriation does not constitute a consideration sufficient to support a conveyance of property of the husband in payment thereof, against his existing creditors, on the ground that a promise to pay them is without legal consideration and incapable of being enforced, and such conveyance is a gift of *his* property.—*Early v. Owens*, 68 Ala. 171. He has the right, and is charged with the duty, to manage and control the separate estate in such manner as will make it available for the purposes for which he receives the rents, income and profits, and may use them in any mode requisite to produce this result. The *corpus* of the separate estate is not liable for farming expenses. For these the husband alone is liable, and unless he is authorized to employ the income and profits in conducting such business, the wife's land might remain uncultivated and unfruitful. From the foregoing principles and from the duty arising from the dual relation of husband and trustee, the logical sequence is, that he may anticipate, by mortgage or otherwise, the crops to be raised on the lands of the wife, when necessary to procure supplies, teams, implements, or other things essential to carry on the farming operations.

The terms of the gift are, as testified by Mrs. Gafford, that Gafford, Sr., being in bad health and unable to work in the farm, gave her and her son the crop, before it was planted or anything was done towards making it, if they would raise it,

[Fancher Bros. & Co. v. Bibb Furnace Co.]

and he would furnish a horse to make it with. The cotton in question was the product jointly, of the land, the labor of the wife and son, and of the horse furnished, being the same purchased from Taylor. The earnings of an unemancipated child belong to the father, and the earnings of the wife are the property of the husband at common law, which in this respect was not abrogated or modified by the statute in force at the time of this transaction. Though the husband may renounce all right to the earnings of the wife, and permit her to retain them as her own, such renunciation is void as against his existing creditors.—*Glaze v. Blake*, 56 Ala. 379; *Gordon v. Tweedy*, 71 Ala. 202. It is unquestionable that if the transaction had been a complete gift consummated after the indebtedness was contracted it would be invalid and inoperative against the right of the plaintiff. If of prior date, the effect and operation depend upon the nature and character of the transaction. At the time the agreement was made, the crop was unplanted. There was not and could not have been a delivery of the subject-matter of the gift, until it came into existence. Without delivery there is no perfected gift. The transaction is a mere executory agreement to give, which being voluntary, is incapable of being enforced. The title did not pass and the dominion was not surrendered.— *Walker v. Crews*, 73 Ala. 412. A promise to give is revocable until delivery; and the execution of the mortgage before the crop was planted was a revocation *pro tanto.—Frisbie v. McCarthy*, 1 Stew. & Por. 56.

Affirmed.