# Warren & Co. *v.* Barnett.

*Action on Common Counts, for Money Had and Received.*

1. *Landlord's statutory lien and remedies.*—The landlord has a lien on the crops grown on the rented lands, whether by the original tenant or a sub-tenant, for the agreed rent; which lien he may enforce against the crops or their proceeds, into whose hands soever the one or the other may pass, until the right and title of a *bona fide* purchaser without notice have intervened.

2 *Same ; constructive notice to purchaser.*—A merchant who receives from the tenant the obligations of the sub-tenants for rent, knowing that the lands are rented by the tenant, is chargeable with notice of the landlord's lien and rights; and if he receives from the tenant an order on a commission-merchant, payable out of the rent cotton received and sold, and collects the money, he is liable to the landlord in an action for money had and received, although he did not know the rent was unpaid, and did not know the particular land on which the cotton was grown.

3. *Same; election of remedies.*—If the factor or commission-merchant, with whom the cotton was stored, and on whom the order was drawn in favor of the merchant, knew that the cotton was grown on the rented lands of the landlord, this might render him liable to an action at the suit of the landlord, for the money paid on the draft, but it is no answer or defense to the landlord's action against the merchant, for the money so received; the landlord having, in such case, a right of action against each, though he can have but one satisfaction.

[Warren & Co. v. Barnett.]

4. *Presumption as to character of wife's estate.*—In the absence of evidence as to the character or quality of a married woman's separate estate, the law presumes that it is statutory.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Thomas M. Barnett, against J. R. Warren, who was doing business in Montgomery as a merchant under the name of J. R. Warren & Co.; and was commenced on the 2d November, 1886. The complaint contained only the common counts, claiming $400 for money had and received, &c.; and the only plea was the general issue. The money sought to be recovered was received by the defendant from Lehman, Durr & Co., on an order for $500 in his favor drawn by Belser & Parker, which was dated October 5th, 1886, and stated on its face that it was "for rents collected, for which they [J. R. W. & Co.] hold collaterals." At the time this order was drawn and paid, Belser & Parker were largely indebted to Lehman, Durr & Co., who were factors, commission-merchants and bankers in Montgomery, and had shipped to them, for sale on account, a large number of bales of cotton, among which were thirty-seven bales grown on a plantation belonging to Mrs. Lillie Barnett, who was the plaintiff's wife; and Lehman, Durr & Co. had then sold thirty-four of those bales. As to the title to the lands, the plaintiff testified, that the plantation belonged to his wife, Mrs. Lillie Barnett, and was managed and controlled by him as her husband; "that he did not know whether it constituted her statutory or equitable separate estate; that he had never seen any deed under which she held it; that she came into possession of it in 1880, on the death of her mother, who, as he was informed, had a life-estate in the lands; that it was, according to his information, entailed property, passing to his wife at the death of her mother; that he rented the plantation to Belser & Parker, for the year 1886, for $1200, taking their promissory note therefor, payable to himself and wife, on the 1st November, 1886; that $800 had been paid to him on this note, by Lehman, Durr & Co., since the transactions on which this suit is founded, and the balance, $400 with interest, was still unpaid." Belser & Parker did not cultivate any part of the lands, but sub-let portions of it to several tenants, taking their obligations for the rent payable in cotton; and they had deposited or transferred these obligations to the defendant,

14

as collateral security for goods sold and delivered, or to be purchased during the year. Belser testified, that he "informed the defendant, at the time he deposited these obligations, to what place they referred, and that the rent they owed for it was $1200; and that he had several times informed defendant of the tenancy of Belser & Parker, the amount of rent they were paying, and that said rent was unpaid." The defendant testified, in his own behalf "that Belser never at any time informed him that Barnett's rent was unpaid, or that Belser & Parker had rented from Barnett; that he knew they occupied as tenants a plantation belonging to one of the Barnetts, but did not know to which one the place belonged; and that he knew the rent notes he held were from the tenants on the "Lillie Barnett place;" that Belser first gave him an order in the usual form, but it was changed, "at his suggestion, that it would probably not be paid unless drawn on account of said cotton from the Barnett place; and that the money received by him was credited on his account with Belser & Parker." It was proved, also, that Lehman, Durr & Co. had knowledge of Belser & Parker's tenancy of the Barnett place, had received and sold the rent cotton, and credited it on the general account of Belser & Parker; that they had agreed with Belser to pay the check in favor of the defendant, being informed that he held the rent obligations as collaterals; and that the money so paid was charged to the general account of Belser & Parker.

On this evidence, the court charged the jury, "if they believed all the evidence, they must find for the plaintiff." The defendant excepted to this charge, and requested the following charges in writing, duly excepting to the refusal of each: (1.) "The defendant's plea puts in issue the plaintiff's right to recover; and to show that right in this case, plaintiff must show that the land on which the cotton was grown was the statutory separate estate of his wife. Under the pleadings, the legal presumption of evidence, that they are such statutory estate, is not sufficient; and if there is no testimony in the case showing that such is the character of the estate, the jury must find for the defendants." (2.) "If the jury find from the evidence that the draft of Belser & Parker, in favor of the defendant, was paid by Lehman, Durr & Co, on the supposition that he had a lien on the cotton, entitling him to the proceeds; then this was not an advance as commission-merchants, for which the law gave them a factor's

lien, if the evidence further shows that the cotton had already been sold, and the proceeds been placed to the credit of said Belser & Parker on their general account." (3.) "If the evidence shows that Lehman, Durr & Co. had notice of Belser & Parker's tenancy under Barnett, this was sufficient to put them on inquiry, as to whether Barnett's rent had been paid; and if such inquiry would have shown that his rent had not been paid, any advance they made upon the cotton, or payment out of the proceeds thereof, would be at their own risk, and they would not have a factor's lien for such advances superior to Barnett's lien, and the payment to defendant would not subject him to a recovery in this action." (4.) "An advance for which the law gives a factor a lien, superior to equities of which he has no notice, is an advance upon property in possession and in existence; and if the cotton upon which it is claimed that the payment was an advance, or the greater part of it, was sold and disposed of before such advance was in fact made, then the factors got no lien upon the cotton so sold, nor did they get a lien upon the proceeds thereof, if, before the advance was made, they had been credited to Belser & Parker on their account current, and the money turned into the common fund of such bankers." (5.) "If the jury believe the evidence, they will find for the defendant."

The charge given, and the refusal of the several charges asked, are now assigned as error.

ROQUEMORE, WHITE & LONG, for appellant.

MARKS & MASSIE, *contra*.

STONE, C. J.—The legal principles governing this case were considered and determined when it was before us at the last term.—*Barnett v. Warren*, 82 Ala. 557. When the case returned to the Circuit Court, some change was made in the testimony, but that change did not benefit the defendant. It made clear that which, on the former trial, furnished only probable cause for inference by the jury. The testimony, as now presented, if believed, shows a clear right of recovery in plaintiff, relieved of all necessity of inferences to be drawn by the jury.

The case, as now presented, shows clearly that Warren, when he received the rent obligations from Belser & Parker, was informed they were contracts of sub-tenants of lands,

[Warren & Co. v Barnett.]

which they, Belser & Parker, had rented from one Barnett; that before Belser gave to Warren the check on Lehman, Durr & Co., for five hundred dollars, he informed him, Warren, that he could only check on the proceeds of the cotton, which was the cotton delivered under the rent contracts he, Warren, held as collateral, and the check proves that it was given on that fund; that before that time 37 bales of cotton, grown on the Barnett place, had been shipped to Lehman, Durr & Co., of which they had sold 34 bales, and had the money, and that the check on them was honored and paid to Warren on the faith of the Barnett rent cotton, and of Warren's possession of the rent contracts, under which the cotton had been delivered.

Warren testified, that he did not know that the rent was unpaid to the paramount landlord, and he did not know the cotton had been grown on the lands which Barnett claimed to control in right of his wife. He admitted, that he knew the cotton was grown on the "Lillie Barnett place." He does not deny, but admits knowledge, that Belser & Parker were tenants of a plantation owned by one of the Barnetts, and that the rent contracts he held as collateral, were those of sub-tenants under Belser & Parker. His ignorance of the particular Barnett who was paramount landlord can not avail him. He knew that Belser & Parker were themselves tenants, and that the rent contracts he held as collateral were those of sub-tenants under them. This was enough to put him on inquiry, which would have led to the discovery of the true landlord, and that a part of the rent was unpaid. It was equivalent to actual notice.—*Lomax v. LeGrand*, 60 Ala. 537.

In the present record, unlike the one before us on the former appeal, the testimony tends to show that Lehman, Durr & Co., when they received and sold the cotton, knew it was grown on lands which Belser & Parker had rented from Barnett. This may tend to show that Barnett could have maintained an action against them, had he chosen to assert the right. It is no answer to the suit against Warren. It frequently happens that the identical chattel becomes the subject of two or more conversions. In such case, the owner may elect which wrongdoer he will sue; or, he may sue each separately, but can have but one satisfaction.

The first charge asked by defendant was rightly refused. In the absence of proof as to the character or quality of a married woman's separate estate, the law raises the presump-

[Martin v. Foster.]

tion that it is statutory.—*Steed v. Knowles*, 79 Ala. 446; *Boyett v. Potter*, 80 Ala. 476.

The general charge was rightly given ·at the request of the plaintiff, and there was no error in refusing either of the charges asked by defendant.

Affirmed.