McGehee v. Gindrat.

McGEHEE *vs.* GINDRAT.

20 95
116 508

1. A debtor has an interest, and consequently a right, to know who is the true owner of a judgment against him, and in the absence of all evidence, save such as the record furnishes, he must look upon the person for whose use the judgment is recovered, as the true owner; and if he be a fictitious person, then the debtor may treat the nominal plaintiff as the real owner, and proceed to settle the demand with him.

2. Whatever is sufficient to put a party upon inquiry, is sufficient to charge him with notice; and a want of notice of a fact, resulting from a failure to use proper diligence to ascertain it, furnishes no protection to a party.

3. A debtor, against whom a judgment had been recovered in the name of his nominal creditor, for the use of a fictitious person, applied to the attorney of record, who was also the attorney of the real owner of the judgment, to know who was the true owner, that he might settle the judgment with him. The attorney, acting under the instructions of the real owner, refused to disclose his name, but informed the debtor that the nominal plaintiff had no right to settle the judgment, and that it had been transferred to one of his creditors. The debtor afterwards settled the judgment with the nominal plaintiff, and the sheriff returned the execution satisfied. On motion by the plaintiff, to have the execution satisfied, *it was held,*

That the defendant could not be charged with implied notice, from the vague

information communicated by the attorney, on the ground that it was sufficient to put him upon inquiry, since the inquiry, *as to the real owner*, had been made, and had proved futile.

ERROR to the Circuit Court of Lowndes.

Tried before the Hon. E. Pickens.

At the Spring Term, 1844, of the Circuit Court of Lowndes, John H. Gindrat, for the use of Levi W. Patton, recovered a judgment against Albert G. McGehee. While the suit was pending, one Haley Hutchinson, who held a note for $2,000 on said Gindrat, which was in the hands of R. A. Colclough, for collection, who was the attorney of record for Gindrat in said suit against McGehee, made an arrangement with said Colclough, that the judgment against McGehee, when collected, should be applied to the partial payment of the debt on Gindrat. In April, 1847, a judgment was obtained by Hutchinson on Gindrat's note, in the Circuit Court of Macon, and Colclough, who was Hutchinson's attorney in the case, before taking the judgment, deducted from the note the amount of Gindrat's judgment against McGehee, and only entered up judgment against Gindrat for the balance. Colclough afterwards informed Gindrat of his arrangement with Hutchinson, and Gindrat ratified and confirmed all that he had done.

It also appeared in evidence, that at no time did Levi W. Patton, or any other person, have any other interest in the judgment against McGehee, except Gindrat and Hutchinson, as above shown. On several occasions, McGehee applied to Colclough, to know who Levi W. Patton was, and who was the real owner of the judgment against himself, but Colclough, acting under the instructions of Hutchinson, refused to disclose his name, and only informed McGehee that Gindrat had no right to settle the judgment, as it had been transferred to one of his creditors. Afterwards, McGehee settled the judgment with Gindrat, and obtained from him an order on Colclough, as follows; "I have settled with Mr. McGehee the claim sued on in Lowndes county. Please arrange it so that Mr. McGehee can have the judgment satisfied by paying costs." (signed) "J. H. GINDRAT."

When Mr. McGehee presented this note to Colclough, the

latter then informed him that Hutchinson was the owner of the judgment, and proposed that they should go and see Gindrat about it, which McGehee declined. A few days afterwards, McGehee gave Gindrat's order to the sheriff, who had in his hands, at the time, an execution issued on the judgment against McGehee, and the sheriff thereupon returned the execution, with an endorsement, in these words: "Received costs and commissions: balance settled with plaintiff, as per his receipt or order. 17th Oct. 1848. B. HARRISON, sheriff."

At the Spring Term, 1851, of the Circuit Court of Lowndes, a motion was made by the plaintiff in the judgment to set aside this return, on the ground that the execution had not been satisfied. Issue being joined between the parties, the court charged the jury, upon the above state of facts, "that if Colclough told McGehee that the judgment against him belonged to one of Gindrat's creditors, and that Gindrat had no right to settle it, and after this, McGehee settled it with Gindrat, that then McGehee settled it in his own wrong, and the return on the execution must be set aside, and they should so render their verdict." To this charge the defendant excepted, and now assigns it for error. It is unnecessary to notice the other assignments of error.

ELMORE & YANCEY, for the plaintiff in error.

The charge given by the court below was based upon the assumption that McGehee had received legal notice of the transfer of the judgment to Hutchinson.

This was error, on the following grounds:

1. The proof shows that Patton, the usee in the judgment, never had any interest in the judgment, and that Gindrat was the sole owner. McGehee therefore had right to settle with Gindrat, at any time previous to the proper notification of the transfer.

2. That which is alleged to be notice, in this case, expressly concealed from McGehee to whom the transfer had been made, whom he was to recognise as the owner. Therefore it was no sufficient notice.

The owner of a judgment can control it; and this fact gives the defendant a right to know with whom he can settle.

The object of notice of a transfer is, to inform the party

McGehee v. Gindrat.

not to settle with an improper person; and to do this, the party receiving notice has the right to be placed in as good a situation as he was before the notice.

Before the notice, McGehee could have effected a settlement with the owner—could have compromised, or obtained delay.

If the information given to him is held to be notice, then McGehee was deprived of this, and could only settle with the sheriff.

3. One object of a notice is, to put the party on his guard—on inquiry.

By the information given to McGehee, he was led to inquire,

1st, of Colclough, "Who is the owner?" Colclough refused to inform him;

2d, of Gindrat; and Gindrat claims the right to settle with him; and Colclough and Gindrat were the only persons privy to the transfer to Hutchinson.

4. In what capacity did Colclough give this information?

Not as the attorney of Gindrat, or as his agent; for Gindrat having transferred his judgment to Hutchinson, as between them, Colclough no longer represented Gindrat.

In giving notice, therefore, to McGehee, he acted as the agent of Hutchinson, who, however, was unknown to McGehee. Colclough's notification, therefore, was not the act of Gindrat, the real plaintiff in the case; and Gindrat being the only known owner, contradicted the idea of there being a transfer, and settled with McGehee. This authorized McGehee to disregard the notice. Whether, therefore, considered with reference to the notice itself, or with reference to the authority to be attached to the conflicting acts of Colclough, the agent of a concealed principal, and of Gindrat, the real plaintiff in the judgment, no sufficient notice was given to McGehee of a transfer of that judgment.

The proposition is true, that notice of a fact sufficient to put a party on inquiry, is notice of all the facts connected therewith, that he can learn by inquiry.

The proposition itself embraces another, that notice of the particular fact is not notice of other facts which cannot be ascertained by the inquiry.

An inquiry by McGehee as to the true owner of the judgment, caused by notice that Gindrat was not the owner, would have been useless and unavailing; because it was agreed between Hutchinson and Colclough, and we are warranted in saying Gindrat also, that McGehee should not receive this information.

But McGehee did inquire, and the information was withheld, and all the parties, by their silence and conduct, warranted McGehee in believing that Gindrat was the owner, especially when we remember that Patton had no interest in the judgment. At all events, the court should have left to the jury the question, if McGehee was warranted in this belief, and did in fact believe it.

N. HARRIS, *contra.*

1. A purchaser from a trustee is chargeable with notice, if he have notice of the trust, although he have no notice of the *cestui que trust.* 1 Hilliard on Real Notice, p. 331, § 13; 1 Murphy, 219; 2 Fonblanque's Equity, p. 444 note, and cases cited in note.

2. Notice of a claim is sufficient, if it is such as to put a party on inquiry. Godfrey v. Brandley, 2 McLean R. 412; 2 Vol. Supplement of U. S. Digest, p. 458, § 23; 7 Monroe, 599; 2 Pirtle's Digest, page 514, § 17; 1 Marshall R. 58.

3. The several charges prayed for by the plaintiff in error were abstract, there being no evidence in the records upon which they could have been predicated; and the contest here is not between two creditors or purchasers, but is between a defendant in a judgment, who has paid the debt to a party who he knew had no right to receive it, and the person who really owned the judgment.

4. When a debt has been assigned, and the debtor has notice of assignment before payment, although he is not notified to whom it has been transferred, payment to the assignor does not release the debtor from paying it to the person to whom it had been assigned. Foster v. Mix, 20 Conn. R. 395.

CHILTON, J.—As it seems to be established that Patton, for whose use the suit against McGehee, in favor of Gindrat, was brought, had no interest in the recovery, McGehee had

the clear right to settle the judgment with Gindrat, unless before the settlement he had received notice, or such facts had been communicated to him as were equivalent to notice, of the transfer of the judgment to Hutchinson.

The main question, therefore, in this case is, whether the charge of the court, in respect to the sufficiency of the notice, is correct.

It was incumbent on Hutchinson, who sought to avoid the settlement between Gindrat and McGehee, on the ground of his right to the judgment, to prove, by sufficient evidence, that he notified the latter anterior to the settlement. His counsel insists that, although McGehee was not notified that Hutchinson was the owner, still he had such information as would reasonably put a prudent man on inquiry, and that this is equivalent to notice.

We think a debtor has an interest, and consequently a right to know who the true owner of the judgment is. It may be that he has cross demands, which either at law or in equity he is entitled to set off; or, if he has no such demand, he is interested in knowing to whom he may look for reparation, in the event of an abuse of the process of the court in proceeding to collect the judgment. In the absence of all information, save such as the record furnishes, he must look upon the person for whose use the judgment is recovered as being true owner. If he be a fictitious person, or as the counsel terms it, "a man of straw," then the debtor may treat the nominal plaintiff as the real owner, and proceed to settle the demand with him.

We have said this much to show that the information sought by McGehee of Colclough, as to who was the real owner of the claim, was such as should, in good faith, have been communicated to him, as a failure to do so might prejudice his rights, and lead to the adjustment of the demand with an improper person. But it is replied to this, that Colclough did inform him that Gindrat had no right to settle the judgment, and that the same had been transferred to one of his creditors; this, it is argued, was sufficient to put him on inquiry, and consequently to charge him with notice. Fully conceding the rule to be that, whatever is sufficient to put a party upon inquiry is sufficient to charge him with notice, and that

a want of notice of a fact, resulting from a failure to use proper diligence to ascertain it, furnishes no protection to a party, 16 Ala. Rep. 597; 13 ib. 55; still this rule cannot be invoked by Hutchinson, as the facts are presented in this case. For here, inquiry was directly made of him, or rather of his agent and attorney, which amounts to the same thing, and the inquiry proved ineffectual. Indeed he had given instructions to the attorney not to inform McGehee that he was the owner of the judgment, and thus rendered all inquiry of him unavailing.

Now, we think it may be safely asserted, as a rule founded in justice and law, that where a party, whose interest may be affected by want of notice of a fact peculiarly within his own knowledge, refuses to communicate it upon direct inquiry made by the opposite party concerning it, he ought not to be allowed, after his adversary has acted in ignorance of the fact, to charge him with implied notice from vague information, which should put him on inquiry, since the inquiry, *as to him*, has been made, and has proved abortive. That he gave such vague information, instead of making a direct communication of the fact when inquired of, although not an estoppel, might well have misled the other party, and have justified him in assuming that Hutchinson was not the owner, else his agent would have so informed him. The question then resolves itself into one of fact for the jury, namely: Did McGehee settle with Gindrat, in ignorance of the fact that Hutchinson was the owner, and was that ignorance the result of a failure to make proper inquiry on the part of McGehee, or of a failure to respond to such inquiry on the part of Hutchinson. If McGehee was in fault in failing to inquire, he can take no advantage of his ignorance. If, on the other hand, Hutchinson purposely withheld from him a knowledge of his claim, when called on to disclose it, he then becomes the party in fault, and should not be allowed to take advantage of his own wrong, and charge McGehee with implied notice of a fact which he purposely refused to disclose. That McGehee might have settled with the sheriff or attorney does not, we think, affect this principle.

These views sufficiently show that the charge of the court, when construed with reference to the facts, was wrong.

Let the judgment be reversed, and the cause remanded.