COCHRANE, Appellant, vs. JACOB E. DECKER & SONS, Respondent.

*May 10—June 1, 1920.*

*Sales: Construction of contract by parties: Agreement to order goods at seller's prices: Validity: Construction: Pleading: Action for commission: Counterclaim for conversion.*

1. A counterclaim for conversion by plaintiff of goods consigned to him by defendant arises out of the same transaction set forth in a complaint for commission, and was properly pleadable by way of counterclaim under sec. 2656, Stats., as it has been liberally construed.

2. A written contract for the handling by plaintiff of defendant's products which permitted plaintiff to order from defendant any quantity of goods he desired, and for which plaintiff was to pay the prices fixed by defendant, retaining anything secured above such prices, clearly and unambiguously provides for the payment of the prices at which defendant billed the goods to plaintiff, so that parol evidence by plaintiff as to the meaning of prices was properly excluded.

3. Where the parties dealt with each other for several months under a contract requiring plaintiff to account for goods consigned to him at defendant's prices, and there was considerable correspondence in which plaintiff expressed dissatisfac-

tion with defendant's prices but did not claim that the price was to be determined in any other way, the course of dealing indicated that the plaintiff was to pay for the goods at the prices at which they were billed by defendant.

4. An agreement to take and handle such goods as plaintiff might order from defendant and pay therefor at prices fixed by defendant which did not require plaintiff to order any goods from the defendant, was not contrary to public policy.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Prior to November, 1916, the plaintiff had for many years been an employee of the Plankinton Packing Company of Milwaukee. About that time he engaged in the merchandising of meats and packing-house products upon his own account, doing business under the name of L. A. Cochrane Company. The defendant operated a packing house at Mason City, Iowa. The plaintiff and defendant commenced doing business about November 15, 1916. Finally their arrangement was reduced to writing under date of November 24, 1916. The defendant agreed to consign the plaintiff such packing-house products as in the opinion of the plaintiff could find ready sale in Milwaukee. Plaintiff agreed to sell the products for defendant's account at prices fixed by it, billing all goods sold to purchasers on triplicate blanks, one of which was to be immediately forwarded to the defendant. There were other provisions with respect to details of continuing the business. Plaintiff agreed to sell on commission within thirty days from date of shipment, and to be responsible for any loss on account of deterioration in quality or shrinkage in cases where goods were not sold within that period. Plaintiff agreed to handle all merchandise belonging to the defendant without expense to the defendant "beyond the following agreed commissions and charges: 50c. per cwt. on all fresh pork, offal, sausage material, including beef, trimmings, boneless butts, etc.; one

per cent. commission on straight or mixed cars of packing-house products."

The agreement was subject to termination by either party by giving five days' notice, and contained provisions for winding up the business in the event the contract should be terminated.

*Cochrane* becoming dissatisfied with the commission arrangement, the contract was modified under date of February 1, 1917. By the modification the clauses of the contract with reference to commissions were abrogated and in lieu thereof the following provisions were to govern:

"All packing-house products and other products to be handled and sold by *Cochrane* are sold for the account of *Jacob E. Decker & Sons,* etc.

"*Decker* is to bill all product to *Cochrane* at their prices f. o. b. Mason City, and *Cochrane* is to receive the difference between said prices and the prices which he sells the product for, and should he sell the product for less than the billing prices, the difference is to be deducted from the above mentioned commissions.

"It is distinctly understood that all charges for transportation on shipments from Mason City will be borne and paid for by *Cochrane,* and that under no circumstances are any expenses of any kind incurred in the handling of this business to be charged to or paid for by *Decker,* it being distinctly understood that *Decker* is to receive at all times the total value of the shipment as priced by them, as heretofore mentioned. It is also understood that any shrinkage or anything of any kind or description not mentioned herein will have to be borne and paid for by *Cochrane.*"

*Cochrane* continued in business until July 20, 1917, in the meantime having converted to his own use a large amount of defendant's products. At or about that time the defendant took possession of all product remaining on hand, and was assisted in disposing thereof by *Cochrane,* who worked under a new agreement. September 11, 1917, the plaintiff began this action to recover a balance due for breach of contract in the sum of $8,124.64.

In his complaint the plaintiff alleged that he had billed four separate items of goods to himself, and claimed commission on account thereof. The defendant answered by way of general denial, and set up by way of counterclaim that the plaintiff had converted goods belonging to defendant to the value of $7,794.12. Upon the trial the plaintiff amended the complaint, set up certain oral agreements, and claimed damages in the sum of $9,376.18.

The case was submitted to the jury upon special verdict. The jury found (1) that the defendant was not indebted to the plaintiff in any sum in excess of $1,258.22 as admitted by the defendant; (2) that the total gross commission to which the plaintiff was entitled was $12,591.36; (3) that there was owing on account of commissions, not considering any of the amounts involved in the counterclaim, $760.90; (4) that the plaintiff was guilty of converting the property of the defendant to his own use; (5) that the defendant had not waived its right to claim conversion; (6) that the damages suffered by the defendant by reason of the conversion were $7,850.44.

There was a motion to set aside the verdict and for a new trial, which was denied, and the defendant had judgment for the sum of $6,084.72, certain items in dispute having been admitted by the defendant to be due the plaintiff in order to avoid possible errors upon the trial. From the judgment the plaintiff appeals.

*F. X. Boden* of Milwaukee, for the appellant.

*Lawrence A. Olwell* of Milwaukee, for the respondent.

ROSENBERRY, J. The plaintiff contends that the matters set up in the defendant's counterclaim were not pleadable as such under the provision of sec. 2656, Stats., relating to counterclaims, because the cause of action set out in the counterclaim sounded in tort and was not pleadable in a contract action.

The cause of action set out in the counterclaim arose out of the transaction set forth in the complaint, and under the liberal construction given to the provision of sec. 2656 in the case of *McArthur v. Moffet,* 143 Wis. 564, 128 N. W. 445, was properly pleadable by way of counterclaim.

The principal contention of the appellant is that the court erred in striking out certain testimony and excluding other evidence offered as to the meaning of the words "their prices," used in the agreement of the parties made February 1st. The plaintiff contends that under *Ganson v. Madigan,* 15 Wis. 144; *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661; *Vilas v. Bundy,* 106 Wis. 168, 81 N. W. 812, and other Wisconsin cases, he was entitled to show the meaning of the words "their prices," and that the words were used with a limited or particular meaning.

There are two answers to this contention. We are not left to the words "their prices," standing by themselves, to ascertain the intent of the parties to this contract. By the agreement of February 1st the defendant is to bill all product at "their prices" f. o. b. Mason City. The plaintiff is to receive the difference between such prices and the prices for which he sells the product, and if he sells for less than the billing price the difference is to be deducted from amounts due the plaintiff, and the plaintiff agrees that the defendant is to receive at all times the total value of the shipment as priced. It is to be remembered that the contract did not require the plaintiff to accept and pay for any specified amount of packing-house product. He might order from the defendant when and as he saw fit. There is therefore nothing inconsistent in permitting *Decker* to place such prices upon the goods shipped by the defendant as the market warranted. To say that this referred to cost price would be unreasonable as to the defendant, for the plaintiff might wait and if prices went up order large amounts of goods, and if prices declined fail to order any goods; an ar-

Cochrane v. Jacob E. Decker & Sons, 172 Wis. 38.

rangement to which no prudent business man, situated as was the defendant, would consent.

In addition to that, the course of dealing between the parties shows that the contract was construed to mean that the plaintiff should take the goods at the price fixed by the bills or invoices rendered to the plaintiff. Not until the suit was begun, although there was considerable correspondence and negotiation between the parties, and the plaintiff expressed dissatisfaction with the defendant's prices, was the claim set up that the price was to be determined in any other way than is clearly indicated by the language of the contract; that is, that the plaintiff was to pay the price at which the goods were billed to him. We are of the opinion that the evidence was properly stricken out and excluded.

The argument is made that, because the contract permitted the defendant to fix the prices at which its goods should be sold, the contract is void as against public policy. We are of the opinion that no question of public policy is involved. The plaintiff was not required to order any goods from the defendant. He knew the prices at which the goods were being billed to him; he knew the market prices; and had he not supposed that he could handle the goods at a profit he would not have continued the arrangement (as he did) for several months.

Several other errors are assigned which we shall not treat in detail. We have examined the voluminous record of seven or eight hundred pages, and have carefully considered the points raised by appellant's attorneys, and are of the opinion that the record shows no substantial error.

*By the Court.*—Judgment affirmed.