JACOB E. DECKER & SONS, Appellant, vs. MILWAUKEE COLD STORAGE COMPANY, Respondent.

*November 19—December 14, 1920.*

*Factors: Pledge of property for factor's debt: Warehouse receipts: Negotiability: Effect when held by original parties: Trover: Successive tortfeasors: Judgment as divesting title: Application of offsets.*

1. In the absence of a statute giving him authority so to do, a factor has no power to pledge for his own indebtedness the personal property of his principal.
2. Sec. 1675—1, Stats. 1915, in effect declaring a warehouse receipt, when not marked "not negotiable," to be negotiable like an inland bill of exchange, according to the law merchant, can aid only a third person into whose hands the receipt comes, and cannot aid a warehouseman to whom the receipt is pledged by the person to whom it was issued—a factor who had stored his principal's goods.
3. The entry of a judgment in one or more actions of tort against separate tortfeasors, who have at different times deprived the true owner of the possession of his property, does not operate to divest the owner of his title. It is only when one of the judgments is satisfied and the owner has received compensation that a tortfeasor can assert title to the property.
4. Under a judgment in an action between D. and C. determining a certain amount to be due from D. to C., and a greater amount to be due from C. to D., and providing for the offsetting of one against the other and for judgment for D. against C. for the difference, D. has the right to declare on which of his obligations C.'s offset shall be applied, no other application having been made by the court or by C.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

The plaintiff is a packing company at Mason City, Iowa. Defendant maintains a cold-storage warehouse in Milwaukee.

Pursuant to written contracts of November, 1916, and February 1, 1917, the plaintiff shipped, under consignment to one Cochrane, doing business under the name of L. A. Cochrane & Company at Milwaukee, a number of carloads of meats to be sold on a commission basis. Cochrane, not having sufficient storage space of his own, from time to time stored certain shipments of plaintiff's meats in defendant's warehouse. Thereupon nonnegotiable storage receipts were issued by defendant to L. A. Cochrane & Company.

A short time before April 30, 1917, Cochrane then having in storage with defendant 183 packages containing 16,501 pounds of pork trimmings and 16,487 pounds of pork loins, desired to borrow $2,600 from the defendant, which, being satisfied that the pork so stored was of sufficient value, agreed to make such loan upon the conditions and in the manner following:

Cochrane's agent, one C. T. Bayorgeon, went to the office of the *Storage Company* on April 30, 1917, and then surrendered the nonnegotiable warehouse receipts for the above mentioned lot of pork. The defendant then issued in lieu of such surrendered receipts its negotiable certificate in manner and form as follows:

No. 3291.
"MILWAUKEE COLD STORAGE COMPANY.
"50–62 Reed Street.
"Milwaukee, Wis., Apr. 30, 1917.
*"This is to certify* that this company, as warehouseman, holds subject to the order of L. A. Cochrane Co., when indorsed hereon, one hundred eighty-three (183) packages marked ——, said to contain 16,501 lbs. pk. trimmings and 16,487 lbs. pk. loins, ——. Storage rate, ——. Accrued charges: Storage, $——; freight, $——; labor, $——.
"Countersigned,            (Signed) HARVEY S. PAULL,
"—— ——, Secretary.            Treasurer."

Such receipt was thereupon indorsed on the back thereof as follows: "L. A. Cochrane Co., per C. T. Bayorgeon."

At the same time he delivered a promissory note in the usual form for $2,600, signed "L. A. Cochrane Co., per C. T. Bayorgeon." The note also contained the usual power to sell the collateral security, describing as such the said certificate. (Another note for the same amount was subsequently signed in lieu thereof by Cochrane himself, but that part of the transaction is not deemed material in the disposition of this case.)

The defendant thereupon gave its check to Cochrane's agent for the $2,600 which was thereafter cashed by Cochrane. No part of the loan of $2,600 was paid by Cochrane to defendant.

In July, 1917, the plaintiff discovered that the course of dealings by Cochrane with its products was not satisfactory, and after an investigation of its affairs learned of the transaction above set forth between Cochrane and the defendant.

Negotiations were then had between plaintiff and defendant with reference to the delivery of the meats covered by the warehouse receipt. Plaintiff tendered to the defendant payment for the storage charges and other claims which plaintiff admitted the defendant had on account of the storage of said goods under its statutory warehouseman's lien and other than the amount involved in the $2,600 loan. Plaintiff then demanded the delivery of the said lot of meats and defendant refused to do so.

This replevin action was commenced in September, 1917. The goods in question were seized by the sheriff under a writ, and, being perishable property, were sold. The amount realized was greater than the amount claimed to be due on said note with interest.

The claims of defendant as warehouseman against said storage of meat other than claimed on account of the $2,600 loan were disposed of between the parties, and no question concerning them is raised on this appeal.

Subsequent to the commencement of this replevin action Cochrane commenced an action against the plaintiff herein,

claiming that there were amounts due him from the plaintiff on account of the transactions under the contracts between them of November, 1916, and February, 1917. In said action the plaintiff asserted a counterclaim for damages against said Cochrane and among the allegations in that regard appeared the following deemed material on this appeal:

"That during the time the said plaintiff was in the employ of the defendant as defendant's broker in the city of Milwaukee, Wisconsin, as aforesaid, said defendant shipped to plaintiff at Milwaukee, Wisconsin, certain meats and packing-house products of more than the actual market value of twenty-six hundred dollars ($2,600), to be sold for and on account of the defendant and the proceeds thereof accounted for and paid over to the defendant. That the said plaintiff, without the knowledge or consent of the defendant, placed said meats and packing-house products in cold storage in the warehouse of the *Milwaukee Cold Storage Company* at Milwaukee, Wisconsin, and thereafter, falsely and fraudulently representing himself to be the owner of said meats and packing-house products, procured a loan from the said *Milwaukee Cold Storage Company* in the sum of twenty-six hundred dollars ($2,600), and fraudulently and unlawfully and without the knowledge or consent of the defendant pledged said meats and packing-house products as security therefor, and fraudulently and unlawfully, without the knowledge of the said defendant, appropriated and converted the proceeds of said loan to his own use and has failed and refused to account for and pay over to the defendant, although due demand has been made upon him so to do, and the said *Milwaukee Cold Storage Company* now claims a lien upon said goods prior and superior to the plaintiff's rights therein and withholds possession thereof from the defendant, and refused to deliver the same to the defendant, and defendant was compelled to recover possession thereof in an action of replevin; that in said action the question of the priority of the alleged lien of said *Milwaukee Cold Storage Company* on said goods to the rights and ownership of the plaintiff is in question and undecided, and said action is still pending in the circuit court for Milwaukee county, Wisconsin. That upon final determination of said case, if the defendant is compelled to pay said sum

of twenty-six hundred dollars ($2,600) and interest, it will suffer a loss and damage by reason of the fraud, dishonesty, theft, embezzlement, and wrongful conversion by the said plaintiff in said amount, together with costs and expenses necessarily incurred in said action."

Upon the trial of said action between Cochrane and the present plaintiff a special verdict was found, in substance as follows:

1. Defendant is indebted in no sum over and above $1,258.22 (changed by stipulation to $1,522.62, admitted by the defendant to be due on account of miscellaneous charges and claims).

2. Answered by the court: Plaintiff earned gross commissions in the amount of $12,591.36 in his dealings with the defendant herein.

3. The net commissions owing by *Decker & Sons* to Cochrane, leaving out of consideration the amounts involved in the counterclaim, were the sum of $760.90.

4. That plaintiff converted to his own use the goods, property, and moneys of the defendant.

5. That *Decker & Sons* did not waive its right to claim conversion against Cochrane.

6. That $7,850.44 is the damage to *Decker & Sons* by reason of the conversion of its goods, wares, and merchandise or the proceeds of the sale thereof by Cochrane.

The judgment entered upon said verdict determined the total amount due Cochrane to be $2,386.84, and the amount due *Decker & Sons* from Cochrane to be $8,252.13; provided for the offsetting of one against the other, and directed judgment in favor of *Decker & Sons* against Cochrane for such difference, in the sum of $5,865.29, with costs, the form of said judgment "to be in damages and as and for a conversion of defendant's [*Decker & Sons'*] property by plaintiff [Cochrane]."

An appeal was taken by Cochrane from such judgment to this court and affirmed as reported in *Cochrane v. Jacob E. Decker & Sons,* 172 Wis. 38, 177 N. W. 856.

In the action herein a jury was waived and trial by the

court. The findings of fact made, so far as material on this appeal, were in substance as follows:

That the boxes and packages containing plaintiff's meats either bore the plaintiff's trade-mark or had plaintiff's name stenciled upon them and also had tags upon which there were written the contents of the box or package and the name L. A. Cochrane & Co.; that the storage charges were made by defendant against L. A. Cochrane & Co. and all vouchers and bills sent to Cochrane; that up to July, 1917, the defendant had no notice or knowledge that the plaintiff or any other person than Cochrane was or claimed to be the owner of the products which Cochrane was storing in defendant's warehouse; that defendant had no knowledge other than from its own transactions as to the business which Cochrane was conducting or the ownership of the meats which he was storing, and defendant made no inquiry in regard to Cochrane, his business, or those meats; that the issuing of the negotiable warehouse receipt hereinbefore described in lieu of the nonnegotiable receipts for the 183 packages was done by defendant acting in good faith and without notice or knowledge of misconduct on the part of Cochrane; that the defendant acted in good faith in loaning to Cochrane $2,600 for which the above receipt was taken; (13) "that immediately upon issuing the negotiable warehouse receipt No. 3291, Cochrane's agent duly indorsed and delivered that negotiable receipt to the defendant, who has held it ever since as collateral security for the loan of $2,600, which has not been paid."

As conclusions of law the court directed as follows:

"(1) That the negotiable warehouse receipt was lawfully issued to Cochrane and that the defendant is an innocent holder thereof for value.

"(3) That the defendant has been at all times since April 30, 1917, lawfully entitled to that receipt and entitled to the possession of the meat product therein specified, as collateral security for the payment to the defendant of $2,600 and interest thereon from April 30, 1917, at the rate of

Jacob E. Decker & Sons v. Milwaukee C. S. Co. 173 Wis. 87.

six (6) per cent. per annum, according to the tenor of said promissory note.

"(4) That the plaintiff was not entitled to the possession of said property at the time of the commencement of this action; and that the defendant was entitled to the possession thereof.

"(5) As the disposal of the meat in question by the plaintiff, upon obtaining possession thereof under the writ of replevin, prevents the return thereof to the defendant, and the value thereof exceeds the amount of the indebtedness for the payment of which the defendant was entitled to hold the goods as security, the defendant is entitled to judgment against the plaintiff for the sum of $2,600 and interest thereon at the rate of six per cent. per annum from the 30th day of April, 1917, and for the defendant's costs and disbursements in this action, and dismissing the complaint on the merits."

It also appeared without dispute that Cochrane did not pay the judgment against him and had no property out of which it could be collected.

From the judgment entered the plaintiff has appealed.

For the appellant there was a brief by *Lawrence A. Olwell* and *Olwell, Durant & Brady,* all of Milwaukee, and oral argument by *Lawrence A. Olwell.*

For the respondent there was a brief by *Churchill, Bennett & Churchill* of Milwaukee, and oral argument by *W. H. Churchill.*

ESCHWEILER, J.  The trial court directed judgment for the defendant upon the theory that although Cochrane, as plaintiff's factor, could not lawfully pledge the meat itself with defendant as security for his personal indebtedness of $2,600, still he might pledge its substitute, that is, the negotiable warehouse certificate, and that the defendant, taking back unto itself in good faith the same certificate, thereby secured a valid existing lien on the meat.  This is challenged by the plaintiff.

Respondent contends, first, that the trial court was right

in that contention; and second, that, even though the trial court's view as to the pledge of the certificate be incorrect, the judgment in its favor can be supported on the ground that, by the assertion in the counterclaim in the action subsequently brought by Cochrane against plaintiff herein and the entry of a judgment in such other action in its favor for an amount which included this identical item of $2,600, the plaintiff exercised such an option in its choice of several remedies that it thereby waived its right to assert a claim for the identical property, as is done in this replevin suit.   This contention was not passed upon by the trial court, it being deemed unnecessary in view of his holding on the first point.

Cochrane was, under his contract with plaintiff and as held by the trial court, a factor.   As such, in the absence of a statute giving him authority so to do, he had no power to pledge for his own indebtedness the personal property of his principal.  *Allen v. St. Louis Bank,* 120 U. S. 20, 32, 7 Sup. Ct. 460; *Warner v. Martin,* 52 U. S. 209, 224; *In re Dreuil,* 205 Fed. 568; *Holton & Winn v. John A. Hubbard & Co.* 49 La. Ann. 715, 22 South. 338; 19 Cyc. 123; 11 Ruling Case Law, 761.   At the time of this transaction there was no statute so empowering him, as was the situation when the decisions in *Price v. Wis. M. & F. Ins. Co.* 43 Wis. 267, and *Hale v. Milwaukee Dock Co.* 29 Wis. 482, 500, were written.

This doctrine is based upon the established rule at common law that (except in market overt) none can give a better title to personal property by sale or pledge than he has himself.  *Commercial Nat. Bank v. Canal-Louisiana B. & T. Co.* 239 U. S. 520, 524, 36 Sup. Ct. 194; *Murray v. Lardner,* 69 U. S. 110, 118; *Nickerson v Darrow,* 3 Allen (87 Mass.) 419; 3 Ruling Case Law, 838; 31 Cyc. 795. See, also, *Pelosi v. Bugbee,* 217 Mass. 579, 105 N. E. 222.

The loan from defendant to Cochrane was prior to the taking effect of ch. 179, Laws 1917, whereby the uniform

bills of lading act was adopted. The parts deemed material of the statutes in force at the time of this transaction are as follows:

Sec. 1675—1, Stats. 1915: "Warehouse receipts, bills of lading, and railroad receipts upon the face of which the words 'not negotiable' shall not be plainly written, printed, or stamped, shall be negotiable as provided in section 1676 of Wisconsin Statutes of 1878, and in sections 4194 and 4425 of these statutes, as the same have been construed by the supreme court."

Sec. 1676, R. S. 1878: "Every warehouse receipt on which the words 'not negotiable' shall not be written or stamped upon the face thereof, shall be deemed negotiable as aforesaid (referring to sec. 1675).

Sec. 1675, R. S. 1878: ". . . shall have the same effect and shall be negotiable in like manner as inland bills of exchange, according to the custom of merchants. . . ."

While this warehouse receipt was in the hands of the defendant which had issued it, although ostensibly and according to the intention of Cochrane and defendant pledged, such receipt had not as yet reached the stage in its existence in which, under the law merchant, the exceptional qualities over the ordinary chose in action are impressed upon instruments of such form and nature.

It is the essence of a bill of exchange that there be three original parties to the transaction: the drawer, the drawee, and the payee, and it is only when a promissory note with but two original parties, maker and payee, has been transferred to a third party that the similarity arises, under the law merchant, between an inland bill of exchange and a promissory note. 1 Daniel, Neg. Inst. (6th ed.) § 29; *Penniman v. Alexander,* 111 N. C. 427, 16 S. E. 408. The same must be equally true of a two-party instrument such as the warehouse certificate here, which, by the statute above cited, is made negotiable only to the extent to which an inland bill of exchange is under the law merchant.

As between the original parties to any of such instru-

ments, the only superiority they have over the ordinary chose in action is that by the law merchant they *prima facie* import consideration.   1 Daniel, Neg. Inst. (6th ed.) § 769.

As appears from facts therein recited, this court was evidently referring to a negotiable warehouse receipt between others than the original parties thereto when it said in *Wall v. Schneider,* 59 Wis. 352, 356, 18 N. W. 443, that "they are negotiable, with like effect as to title as negotiable paper for the payment of money."

As between the pledgor and the pledgee here, such warehouse certificate was in effect no more than a chose in action and could give no greater rights to the pledgee taking its own warehouse certificate than it could have received by an attempted pledge by Cochrane of the same goods.   In the absence of some element of estoppel, and none such appears here, the expedient adopted by Cochrane gave no greater or better title to the pledgee, the defendant, than could have been given by Cochrane by the pledge of the property itself. Regardless of the unquestioned good faith on the part of the defendant in this transaction, the true owner's rights were not cut off or diminished by the form that the transaction took in this particular instance.   *Commercial Nat. Bank v. Canal-Louisiana B. & T. Co.* 239 U. S. 520, 524, 36 Sup. Ct. 194; *Soltau v. Gerdau,* 119 N. Y. 380, 23 N. E. 864; *First Nat. Bank v. Boyce,* 78 Ky. 42, 55; Elliott, Bailments, p. 102.

The distinction is substantial between where the principal, as here, intrusts personal property to his factor and the situation where a negotiable instrument itself is given to the factor that it, as such negotiable instrument itself, may be sold in the market.   The judgment, therefore, cannot be upheld on the grounds upon which it was determined by the trial court.

Neither can the judgment in defendant's favor be supported upon any theory of alleged waiver by plaintiff of its right to maintain this action or by the alleged exercise of its option to choose one of two inconsistent legal remedies.

As we have indicated, plaintiff's ownership and title to the property was not affected by Cochrane's storing it in defendant's warehouse or by his taking a warehouse certificate therefor, although negotiable in form, or by his attempted pledge of such instrument with defendant. Plaintiff had a cause of action in tort against Cochrane when he did so treat the property stored as his own by taking and attempting to pledge the warehouse certificates to secure his own indebtedness. Thereafter, and when the plaintiff learned of the position that this property was in through Cochrane's fraud, and as the lawful owner, demanded it from defendant in whose possession it was, the defendant by its refusal to surrender possession then and there committed a tort as against the plaintiff, however devoid of actual fraud or intentional wrongdoing its former transaction with Cochrane may have been. It owed a duty to plaintiff to restore to it the property of which plaintiff was the lawful owner, and defendant's failure to do so was a breach of such duty and consequently a tort. Plaintiff, still treating the property as its own, might lawfully and properly commence this action for replevin for the return of the property to it as lawful owner.

Upon Cochrane commencing his action for an accounting and damages against the plaintiff arising from their former transactions, the plaintiff here specifically set forth in its answer the situation in which Cochrane's actions had placed the property, alleged that there was a conversion thereof, and prayed for damages for such tort. The judgment as finally entered in such action was for the unlawful conversion of plaintiff's property by Cochrane.

All the way through these two separate actions, therefore, the plaintiff was consistently maintaining that it was the lawful owner of the property and that first Cochrane and then the defendant had by their separate and independent torts deprived the plaintiff of the possession of its property. The question was raised and determined in *Cochrane v. Jacob E. Decker & Sons*, 172 Wis. 38, 177 N. W. 856, and

Jacob E. Decker & Sons v. Milwaukee C. S. Co. 173 Wis. 87.

cannot certainly now be raised in this case, that the counter-claim for fraud and the seeking of damages for conversion could be properly asserted in the action brought by Cochrane against plaintiff based upon contract.

The mere obtaining of a judgment in one or both of two separate tort actions against separate tortfeasors who have each, as in this case, the one at one time and the other at another, deprived the true owner of the possession of his property, cannot be held to divest the true owner of his title to the property. Not until one or the other of such judgments has been satisfied, so that the owner of the property has received payment and compensation for the value of the property, can any tortfeasor assert title has passed from the owner.

While the English courts for a time, and some of the authorities in this country at earlier dates and occasionally one at the present time, upheld and uphold the doctrine that the entry of a judgment was a sufficient renunciation of title, the great weight of authority, and that which we prefer to follow, is that it is satisfaction of the judgment and not the mere obtaining thereof that by law divests the original owner of his title. *Atwater v. Tupper*, 45 Conn. 144; *Miller v. Hyde*, 161 Mass. 472, 37 N. E. 760; *John A. Tolman Co. v. Waite*, 119 Mich. 341, 78 N. W. 124; *Russell v. McCall*, 141 N. Y. 437, 450, 36 N. E. 498; *Kendall v. Stokes*, 44 U. S. 87, 100; *Vandiver & Co. v. Pollak*, 107 Ala. 547, 558, 19 South. 180; 2 Cooley, Torts (3d ed.) p. 881; 26 Ruling Case Law, 1157; 38 Cyc. 2112.

The plaintiff having taken no steps nor assumed any position which indicated that there had been a waiver of the tort committed either by Cochrane or the defendant as to plaintiff's ownership of the property, and nothing having been done by plaintiff indicating that it elected to waive the tort and rely upon an implied contract to pay for the value of the goods, the cases relied upon by defendant, such as *Crook v. First Nat. Bank*, 83 Wis. 31, 52 N. W. 1131; *Smeesters v.*

*Schroeder,* 123 Wis. 116, 101 N. W. 363; *McDonald v. Markesan C. Co.* 142 Wis. 251, 125 N. W. 444; *Fox v. Wilkinson,* 133 Wis. 337, 113 N. W. 669; *Hargadine-McKittrick D. G. Co. v. Warden,* 151 Mo. 578, 52 S. W. 593; *Shonkweiler v. Harrington,* 102 Neb. 710, 169 N. W. 258; or such cases as *Russell v. Martin,* 232 Mass. 379, 122 N. E. 447, are not in point here.

Plaintiff has the right to declare that the amount admitted due Cochrane from the plaintiff here in the suit against it by Cochrane should be treated as applied to the other obligations of Cochrane to plaintiff and included in the amount of damages determined by the judgment in that action rather than on this $2,600, no other application having been made by the court in that action and Cochrane having failed to assert his right to make such application, if any such right he had. *Nelson v. Davison,* 152 Wis. 567, 570, 140 N. W. 334; *W. H. Pipkorn Co. v. Evangelical L. St. Jacobi Soc.* 144 Wis. 501, 129 N. W. 516; *Coxe Bros. & Co. v. Milbrath,* 110 Wis. 499, 502, 86 N. W. 174; *Zinns Mfg. Co. v. Mendelson,* 89 Wis. 133, 135, 61 N. W. 302; *Grace Harbor L. Co. v. Ortman,* 190 Mich. 429, 157 N. W. 96; 30 Cyc. 1233; 21 Ruling Case Law, 90.

It follows from what has been said that the plaintiff rather than the defendant was entitled to judgment.

*By the Court.*—Judgment reversed, with directions to enter judgment for plaintiff.