(117 So. 681)

**CITY NAT. BANK OF DECATUR v. NELSON. (8 Div. 1.)**

Supreme Court of Alabama. March 29, 1928.

Rehearing Denied June 28, 1928.

Somerville and Brown, JJ., dissenting on application for modification.

A. J. Harris, of Decatur, for appellant.

Tennis Tidwell, of Decatur, for appellee.

ANDERSON, C. J. This is the second appeal in this case. 214 Ala. 297, 107 So. 849.

We think the sixth count of the complaint not only sufficiently charges that the plaintiff had a lien, but that the defendant had notice that the cotton in question was subject to said lien.

It is true section 8806, of the Code of 1923, not only gives the landlord a lien on the crop grown by the tenant but upon the proceeds of the sale of said crop. It is also true, that there cannot be a total or entire destruction of the lien until the crop is disposed of and the proceeds are beyond reach of the landlord. Ehrman v. Oats, 101 Ala. 608, 14 So. 361.

But we have held, that a landlord may maintain case against one who, with notice of the landlord's statutory lien, purchases from the tenant crops grown on the rented lands, and removes or converts them so as to defeat or otherwise obstruct the enforcement of such lien by the statutory remedy of attachment. Thompson v. Powell, 77 Ala. 391. "The principle is analogous to, if not strictly identical with, that which affords a like remedy against one who converts property upon which a plaintiff has an equitable mortgage." First National Bank v. Sproull, 105 Ala. 280, 16 So. 879.

It is true, the complaint proceeds upon the theory of a total destruction and prevention of the enforcement of the lien, rather than an obstruction, but we do not think it was subject to ground (d) of defendant's demurrer, the one insisted upon in brief. The complaint avers how the lien was destroyed and how plaintiff was prevented from enforcing her lien, that is by selling and disposing of the cotton. If these facts do not show a total destruction of the lien so as to prevent the enforcement thereof, the demurrer does not point out the defect.

It is insisted, that the defendant was entitled to the general affirmative charge because a purchaser for value of the warehouse receipts. True, under the "Uniform Law for Warehouse Receipts," section 10509, of the Code of 1923, makes them negotiable if issued under the terms of section 10506, and sections 10549 and 10550 deal with transfers and the title thereby acquired, but we find nothing in these provisions protecting any one, but a bona fide purchaser, that is, one who purchases for value and without notice, express or implied, of a superior claim or title. Farmers' Warehouse Co. v. Barnett, 214 Ala. 202, 107 So. 46. Indeed, the main case relied upon by appellant's counsel, Commercial National Bank v. Canal-Louisiana Bank & Trust Co., 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, in effect, holds that only bona fide purchasers are protected, that is, purchasers without notice. To like effect is the case of Warrant Warehouse Co. v. Cook, 209 Ala. 60, 95 So. 282. There was evidence from which the jury could infer that the defendant not only knew that Sims was the plaintiff's tenant, but that the cotton was grown on her place and was subject to her lien. At any rate, there was proof of such facts from which the jury could infer that the defendant could have easily ascertained that the cotton was subject to the plaintiff's lien, facts which would have put a prudent man on inquiry and which if followed up would have disclosed the plaintiff's claim.

It is conceded that the rule, as above stated, is supported by the cases of Craft v. Russell, 67 Ala. 9, and Starr Piano Co. v. Baker, 8 Ala. App. 449, 62 So. 551, but it is contended. that this rule has been changed by the Uniform Warehouse Receipt Act and that a purchaser is protected, unless he has

notice of the claim of another and is not chargeable with facts which would put a prudent man on inquiry, and which if followed up would lead to a discovery of the said claim. We cannot agree to this contention, and do not think that the act in question was intended to change or modify a well-defined definition or rule as to what constitutes a bona fide purchaser.

We do not think the case of Spires v. Jones, 212 Ala. 117, 101 So. 753, is in conflict with this holding or was intended to relieve a purchaser from pursuing substantial facts which would put a prudent man on inquiry, and which would lead to the discovery of a superior claim. There the court held that a mere suspicion of facts which only related to a fraudulent but invisible state of mind would not affect the bona fides of the purchase. This case does not hold, that the existence of visible or substantial facts which would put a prudent man on inquiry need not be followed up, although they would lead to the discovery of a superior claim. In fact, the opinion says, "There was at that time nothing to affect their validity, nor would any sort or degree of inquiry have discovered anything, so far as the evidence shows." Here we have, according to the plaintiff's evidence, not only knowledge on the part of the defendant's officer that Sims was the tenant of the plaintiff for the year 1920, but for several years previous thereto, as well as a course of dealing between the bank and Sims for several years during said relationship.

■ There was no error in refusing the defendant's requested charges 11, 12, 13, 14, 15, and 16. Nor was there error in so much of the oral charge of the trial court as is made the basis of the 12th assignment of error.

There was no reversible error in so much of the oral charge as is made the basis of the 13th assignment of error. Whether correct or not, if erroneous it was without injury as this record affirmatively shows that the jury did not find that the defendant was an innocent purchaser or lienor of the cotton.

■ We think the trial court erred in not sustaining the defendant's motion, to exclude the evidence of Mrs. Sims as to mixing the cotton, and made the basis of the third assignment of error. The witness testified on redirect examination: "If he lacked any bale of cotton he picked on his home place, he would make out from the other, and if he lacked at that place he would pick out from the home place and just mix it together." On recross the witness stated: " * * * I actually didn't see it. I said he mixed it because that was his rule, that fall I didn't actually see it." The motion to exclude specifically stated, "the evidence of the witness that if Sims did not have enough cotton picked off of one place to make a bale, he would mix it with cotton picked off of another place." The witness on recross showed that she did not know the facts to which she had testified.

■ There was no error in refusing the defendant's requested charge 13. If not otherwise faulty, it invaded the province of the jury, as it was for it to determine whether or not the facts therein hypothesized, amounted to a waiver of the lien for advances.

■ We think that charge 11, refused the defendant, if not otherwise faulty, is misleading and confusing as to the intermingling of the cotton and there was no error in refusing same. We think the defendant should have been permitted to show by the witness, Shackelford, the cashier, whether he was or was not acquainted with the business affairs of Sims, as having some bearing upon the duty to make inquiries and whether or not it would have led to a discovery of the fact that the cotton was subject to a lien. For instance, if Sims was only engaged in farming on plaintiff's land, the fact that the cotton was subject to her lien was more easily ascertained than if Sims farmed on other land or obtained cotton through other business channels. In fact, we stated in effect in a former part of this opinion that the course of business between Sims and the bank, was a circumstance to be considered in fixing notice on the defendant and the amount of diligence required in ascertaining the true facts. The question here does not seem to be identical with the ones held to be immaterial upon the former appeal.

■ There was no error in refusing charge 4, made the basis of the 17th assignment of error. If the tenant stored the Nelson cotton in the warehouse together with other cotton, and it thereby became so commingled that there was no way of identification so as to separate one from the other, the plaintiff's lien extended prima facie to the entire lot. Burns v. Campbell, 71 Ala. 271; Alley v. Adams, 44 Ala. 609; Lehman, Durr & Co. v. Kelly, 68 Ala. 192.

■ So much of the oral charge as made the basis of the 9th and 10th assignments of error is not faulty. The 9th simply states that the plaintiff's lien was superior to that of a purchaser with notice. Nor was the definition or explanation of notice as complained of in the 10th assignment of error improper. It not only requires notice of the relationship, but that the cotton was raised on the rented land and this was sufficient. Atkinson & Turner v. James, 96 Ala. 214, 10 So. 846. We do not interpret the former opinion in this case as holding to the contrary.

For the errors pointed out the judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

SOMERVILLE, THOMAS and BROWN, JJ., concur.

SAYRE, J. (concurring). The statute concerning negotiable warehouse receipts (Code, §§ 10505–10564) undertakes to deal with the

property rights evidenced by such receipts as between the holder and the warehouseman. It does not affect or purport to affect the property rights of the true owner or lienholder who is not a party to the receipt —indeed, the statute recognizes the rights of such person as being unaffected by it. Section 10524. Therefore, the question as to the meaning of that part of the statute which confers negotiability upon receipts had no proper place in the controversy between the parties to this cause, viz. the purchaser of the receipt and the landlord who was not a party to it.

## On Application for Modification of Opinion.

ANDERSON, C. J. ██ Movant insists that regardless of the definition heretofore given to a bona fide purchaser by the authorities of this state, that section 10562 of the Code of 1923, in defining the terms of the article, says:

"A thing is done in 'good faith' within the meaning of this article when it is in fact done honestly, whether it be done negligently or not."

We cannot believe that this was intended by the Legislature to overturn or upset the well understood meaning of a bona fide purchaser as heretofore defined or as used in the article. The rule applicable to defining clauses is that they should be used only for the purpose of interpreting words that are ambiguous or equivocal and not so as to disturb the meaning of such that are plain. 36 Cyc. 1106.

Motion overruled.

SAYRE, GARDNER, THOMAS, and BOULDIN, JJ., concur.

SOMERVILLE and BROWN, JJ., dissent.

SOMERVILLE, J. (dissenting). A majority of the court hold that the purchaser of a negotiable warehouse receipt, under the Uniform Warehouse Receipts Act (Code 1923, §§ 10505–10564; Uniform Laws Annotated, vol. 3), is not protected against a landlord's lien for rent in any case where he has knowledge of facts which would put a prudent man on inquiry, and which, if followed up, would disclose to him the existence of the lien.

This, of course, is the common-law rule applicable to purchasers of property in general, including nonnegotiable instruments. Lomax v. Le Grand, 60 Ala. 537; Scaife v. Stovall, 67 Ala. 237; Townsend v. Brooks, 76 Ala. 311; Kyle v. Ward, 81 Ala. 120, 1 So. 468; Warren v. Barnett, 83 Ala. 208, 3 So. 609; Atkinson v. James, 96 Ala. 214, 10 So. 846; Foxworth v. Brown, 114 Ala. 299, 21 So. 413; Id., 120 Ala. 59, 24 So. 1; Norton v. Orendorff, 191 Ala. 508, 67 So. 683; Street v. Treadwell, 203 Ala. 68, 82 So. 28.

More specifically, it has been thoroughly settled that a purchaser of crops is charged with knowledge of the lien, as a matter of law, if he knows they were raised on rented premises. Lomax v. Le Grand, 60 Ala. 537; Gillespie v. McClesky, 160 Ala. 289, 299, 49 So. 362; Sloan v. Hudson, 119 Ala. 27, 24 So. 458; City Nat. Bank v. Nelson, 214 Ala. 297, 107 So. 849.

Under our former Warehouse Receipts Act (Code 1907, §§ 6135 (4222) 1178), the common-law rule as to notice was applied to purchasers of the receipts for value—this for the reason that the simple terms and narrow scope of the act embraced but two purposes: (1) To prevent the issue of false receipts by warehousemen; and (2) to permit the transfer of the *stored goods* by the transfer of *the receipt* as their symbol. There was nothing in the act otherwise affecting the status and rights of the purchaser of such receipts —nothing suggestive of a change as the test or measure of the good faith that would protect him against unknown liens. Commercial Bank v. Hurt, 99 Ala. 130, 141, 12 So. 568, 19 L. R. A. 101, 42 Am. St. Rep. 38; 17 Ann. Cas. 672, 673, note.

It must be understood that the underlying principle of the common-law rule as to good faith in the purchase of property is the exercise of *due diligence* by the purchaser to ascertain the existence of outstanding liens or charges, which means simply the exercise of due care, or the absence of negligence. "If the want of notice—of actual knowledge or information—result from the failure to use proper diligence to ascertain whether the fact or right exists, protection against it cannot be claimed." Per Brickell, C. J., in Lomax v. Le Grand, 60 Ala. 537, 543. In Chapman v. Glassell, 13 Ala. 50, 55 (48 Am. Dec. 41), it was said that "want of notice of a fact, which is the result of a want of that diligence which the law requires for its ascertainment, furnishes no ground for protection." This was repeated in Herbert v. Hanrick, 16 Ala. 581, 597, and McGehee v. Gindrat, 20 Ala. 95, 101. This basis of diligence or due care has been constantly recognized. Overall v. Taylor, 99 Ala. 12, 16, 11 So. 738; M. & M. R. Co. v. Felrath, 67 Ala. 189, 191; Taylor v. A. & M. Ass'n, 68 Ala. 229, 240. Finally, in 27 R. C. L. 710, 711, § 475, the rule is thus explained:

"The reason on which this rule is based is that notice is imputed because of the *negligence* of the purchaser in making the inquiry. Therefore, to charge a purchaser with constructive notice, the circumstances relied on as putting him on inquiry must be such as would naturally raise a suspicion in the mind of a reasonably or *ordinarily prudent* man and necessitate an inquiry, or such that a charge of *negligence* or *neglect* of duty in failing to make inquiry may be reasonably based" (italics supplied).

See, also, 3 R. C. L. 1072, §§ 278, 279, explaining the difference between negligence in this connection and *willful ignorance*, which is bad faith or dishonesty; and 8 Corpus Juris, 501, § 710, and page 505, § 711. The differ-

ence between "negligence" and "dishonesty" (34 L. R. A. 69) is well stated in Cheever v. Pittsburg, etc., R. Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646.

With this understanding of the common-law rule, we now consider the provisions of the Uniform Warehouse Receipts Act, which has been adopted by 46 states, and which was adopted by Alabama on September 25, 1915 (Acts 1915, p. 661), and is embodied in sections 10505–10564, Code 1923.

The purpose of this act is "to provide a uniform law for the issuing, assignment or transfer of such receipts, and to fix the rights and liabilities of all parties to, or connected with, the issue, assignment, transfer or negotiation of such receipts, and to regulate the same." Acts 1915, p. 661. It contains 61 sections, and deals elaborately and *distinctively* with the rights and title acquired by negotiation on the one hand (section 10550), and by a mere transfer or assignment on the other (section 10551).

Section 10550 declares:

"A person to whom a negotiable receipt has been duly negotiated acquires thereby: (1) Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value; and (2) * * *"

Section 10557 declares that:

"The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or, * * * if the person to whom the receipt was negotiated, * * * paid value therefor, in good faith, without notice of the breach of duty or loss, theft, fraud, accident, mistake, duress or conversion."

Section 10560 declares:

"In any case not provided for in this article, the rules of law and equity, *including the law merchant*, * * * shall govern." (Italics supplied.)

Section 10562, defining terms used in the act, declares:

"(1) * * * (2) A thing is done in 'good faith' within the meaning of this article when it is in fact done honestly, whether it be done negligently or not."

"Honestly," in this connection, scarcely needs definition, but Webster's New International Dictionary defines it as "free from fraud, guile, or duplicity." Certainly a thing is honestly done if the doer is not at the time conscious of fraud or wrong in the act or its consequences. "The cardinal principle of the act—which has been adopted in many states —is to give effect, within the limits stated, to the mercantile view of documents of title." Commercial National Bank v. Canal-La. Bank,

239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25.

The majority view is that there is nothing in this act that changes or enlarges the common-law rule as to purchasers for value. With this view I am unable to agree. To my mind, the meaning and effect of the definition of good faith found in section 10562 (section 58 of the act) is too plain to permit of valid controversy.

Prior to the adoption of our Negotiable Instruments Law (Code 1923, §§ 9029–9214)— which merely declares the pre-existing law in that respect—this court, per Stone, C. J., stated the rule for negotiable instruments as follows:

"The rules as to notice, sufficient to charge a purchaser of commercial paper before maturity, are widely different from those which obtain in the purchase of property and of noncommercial paper. * * * 'Even *gross negligence* at the time of purchase does not, alone, defeat the purchaser's title a purchaser may have had suspicion of a defect of title, or knowledge of circumstances which would excite such suspicion in the mind of a prudent man; or he may have disregarded notices of stolen bonds; and yet, if he has purchased for value in good faith, his title cannot be impeached. * * * It must be shown that he did not purchase *honestly.*'" (Italics ours.) Spence v. M. & M. Ry. Co., 79 Ala. 576, 586.

I see no escape from the conclusion I have reached that the definition of good faith in section 10562 (section 58 of the act) is a condensed, but comprehensive, restatement of the rule thus stated by Chief Justice Stone. In each, *honesty* (the exclusion of bad faith) is made the test, and in each mere *negligence* (the failure to diligently follow up suspicious or suggestive facts) is excused.

How, then, can any court say, in the face of the statute, that one who has purchased a negotiable warehouse receipt by negotiation *honestly*, though negligently, is not to be protected against an unrecorded lien? I agree with the Supreme Court of the United States, as noted above, that such protection is a cardinal purpose of the act. The majority hold either that the statute has not changed the common-law rule of notice, or that the purchaser's knowledge of the seller's tenancy renders his purchase dishonest as a matter of law. In my judgment, neither alternative is defensible, and both are violative of the plain, unambiguous language of the statute.

I agree that in general the question of honesty or bad faith depends upon the character and cogency of the facts known to the purchaser when he buys, and will usually be a matter for the jury to determine. 3 R. C. L. 1075, § 280. It was clearly a jury question in this case. It will not do to say that this defendant's former knowledge of the fact that his vendor was a tenant of the plaintiff several years before his purchase is inconsistent with the theory of an honest purchase. He

may have honestly forgotten the fact, or he may, in any case, have credited the statement actually made to him by the seller that the cotton represented by the receipts was free of all liens and charges, or he may have *negligently* assumed that this seller would never be guilty of selling the receipts wrongfully or in fraud of his landlord's rights, or a long course of such dealings with the tenant, without ever a complaint from the landlord, may have induced a belief, however imprudent, that the tenant habitually paid up his rent, and had done so in this instance, and all this without anything approaching dishonesty or bad faith, as we may choose to call it.

The trial court refused to defendant a number of special instructions framed in the very language of the act (Code, § 10562; Act, § 58), predicating protection to him against plaintiff's lien if he took the receipts "honestly," and did not know of the lien, and instructed the jury ex mero motu that knowledge that the cotton was raised on premises rented from plaintiff, or knowledge of any other facts which would excite suspicion and cause a reasonable man to inquire about it, and lead to its discovery, would destroy his status as an innocent purchaser, and give plaintiff a superior right. In these matters I think the trial court was clearly in error.

Another point of view is worth noting: If, as the majority hold, the language of the statute makes no change in the common-law rule of notice, why is not the defendant entitled to have instructions given to the jury in the simple language of the statute? It is not consistent to say that the statute is in harmony with the common-law rule, but that an *instruction* based on that statute is in conflict with that rule.

The majority are content to dispose of the statutory definition by simply saying:

"We cannot believe that this was intended by the Legislature to overturn or upset the well-understood meaning of a bona fide purchaser as heretofore defined or as used in the article."

The fallacy here, as I think is very clear, is in the assumption that there had been heretofore only one definition of a bona fide purchaser. *On the contrary*, there have been two distinct and conflicting definitions for more than 100 years (8 Corp. Jur. 500, § 7100), the one applicable to purchasers of property and of nonnegotiable instruments, and the other to purchasers of negotiable instruments. Spence v. M. & M. R. Co., 79 Ala. 576, 586. The obvious purpose of section 58 of the Uniform Warehouse Receipts Act is to make clear which of these two variant definitions or theories should be applied to bona fide purchasers of negotiable warehouse receipts, and it clearly adopts the rule applicable to negotiable instruments in general; that is, the rule of *honesty* as opposed to the rule of *negligence*. In excluding negligence it rejects

the very heart of the common-law rule; and in making honesty the test it adopts the very heart of the negotiable instruments rule. The purpose, therefore, cannot be misunderstood.

Our case of Farmers' Warehouse Co. v. Barnett, 214 Ala. 202, 107 So. 46, correctly held that as against a legally recorded title to the property—a mortgage—a purchaser of the warehouse receipt acquired no title. That case presents no question of good or bad faith. It involves, not a rule of evidence, but of substantive law, and the law protects absolutely every legally recorded title. The doctrine of bona fide purchaser has never been conceived of as affecting such a title. Nor can one not the owner of property defeat the true owner's title by the expedient of depositing it in a warehouse and wrongfully negotiating receipts taken in his own name, even to a bona fide purchaser for value. Climber Motor Corporation v. Fore (Tex. Civ. App.) 273 S. W. 284, 288. Statutes providing for the negotiation of warehouse receipts are intended to protect the negotiatee against latent equities only, and not against the legal title of an innocent owner. Ala. State Bank v. Barnes, 82 Ala. 607, 616, 2 So. 349; Nat. Union Bank v. Shearer, 225 Pa. 470, 74 A. 351, 17 Ann. Cas. 664; Decker v. Milwaukee Cold Storage Co., 173 Wis. 87, 180 N. W. 256, 14 A. L. R. 416, 421; Weaver Cotton Co. v. Batesville Compress Co., 168 Ark. 387, 270 S. W. 509, 38 A. L. R. 1200.

I concur in the reversal of the judgment on the ground stated in the opinion of the court, but must dissent from the construction given to section 10562 of the Code (Act, § 58), and from the rule of notice declared as applicable to a bona fide purchaser of negotiable receipts for value.

BROWN, J., concurs in the foregoing opinion.